968 So.2d 39 (2007)
SURVIVORS CHARTER SCHOOLS, INC., Appellant,
v.
The SCHOOL BOARD OF PALM BEACH COUNTY, Appellee.
Nos. 4D06-2378, 4D06-2379.
District Court of Appeal of Florida, Fourth District.
July 11, 2007.
Rehearing Denied December 4, 2007.
*40 Bryan J. Yarnell of Watterson & Zappolo, P.A., Palm Beach Gardens, for appellant.
Randall D. Burks, Ph.D. of the School Board of Palm Beach County, Office of Chief Counsel, West Palm Beach, for appellee.
PER CURIAM.
Survivors Charter Schools, Inc. (Survivors) appeals the termination of its charters for two schools, Survivors Charter School West Palm Beach (Survivors WPB) and Survivors Charter School Boynton Beach (Survivors BB). Survivors raises eleven points on appeal, most of which are directed at whether the Administrative Procedure Act of Florida Statutes chapter 120 applied to the charter termination process and related due process concerns. For the reasons that follow, we reverse.
In 2001, the School District of Palm Beach County entered into a ten-year Charter School Charter with Survivors for the operation of Survivors WPB. In 2003, the School District entered into a ten-year Charter School Charter with Survivors for the operation of Survivors BB.
The largely identical charters provided the following in General Provision I regarding the termination of the charters:
The District may terminate the Charter during the term of the Charter, for any of the grounds listed below:
1. A failure by the Charter School to meet the requirements for student performance stated in this Charter;
2. A failure by the Charter School to meet generally accepted standards of fiscal management;
3. A violation of law by the Charter School;
4. Other good cause shown.
The charters also set forth the procedures governing the termination of the charters in General Provisions J and K:

*41 J. This Charter may be terminated immediately upon twenty-four (24) hours notice if the Sponsor determines that good cause has been shown or the health, safety, or welfare of the students is threatened or impaired. The Sponsor [the District] may assume the operation of the Charter School under these circumstances for a period of time as determined solely and exclusively by the sponsor.
K. The procedures for terminating this Charter are as follows:
1. At least ninety (90) calendar days prior to terminating this Charter, unless the Sponsor seeks immediate termination pursuant to Section J, the Sponsor shall notify the governing body of the Charter School of the proposed action in writing. The notice shall state in reasonable detail the grounds for the proposed action and stipulate that a request for an informal hearing before the Sponsor may be requested within fourteen (14) calendar days of receipt of the notice.
2. The Sponsor shall conduct an informal hearing within (30) calendar days after receiving a written request.
3. The Charter School's governing body may, within fourteen (14) calendar days after receiving the Sponsor's decision to terminate the Charter, appeal the decision to the State Board of Education pursuant to § 228.056(10)(c), F.S. This section K does not apply to this Charter being terminated pursuant to Section J of this Charter.
The Survivors BB charter does not contain the final clause of General Provision K regarding non-applicability of General Provision K if termination is pursuant to General Provision J, and the Survivors BB charter updates the statutory reference from section 228.056(10)(c) to section 1002.33(8). Furthermore, the charters do not indicate that the termination process is excluded from the Administrative Procedure Act.
On January 13, 2006, the School District completed an audit report for both Survivors WPB and Survivors BB. The audit report included fourteen findings of fiscal mismanagement. On January 18, 2006, the Palm Beach County School Board considered the audit report. On January 23, 2006 (the parties do not dispute this date although it is not reflected on the document), the School Board published a Notice of Special Meeting listing a special meeting for January 25, 2006 from 5:00-6:00 p.m. regarding Disposition of Charter Schools/Alternative Education. On January 24, 2006, the School Board hand-delivered "Notification[s] of Superintendent's Recommendation to Immediately Terminate Charter Agreement" to both Survivors WPB and Survivors BB. The notifications indicated that the recommendations for immediate termination based on good cause were "due to the severity of the Audit Findings" and that the recommendations would be considered at the noticed special meeting on January 25, 2006.
On January 25, 2006, the School Board held the noticed special meeting regarding the Survivors' charters at which it heard public comments (including from some individuals affiliated with Survivors). At the special meeting, the School Board approved the termination of the Survivors WPB and Survivors BB charters. Following the special meeting, the School Board hand-delivered "Notification[s] of Immediate Termination [of] Charter Agreement" to both Survivors WPB and Survivors BB. The notifications indicated that the terminations were based on section 1002.33(8)(d) and General Provision J of the charters and would become effective in twenty-four hours.
*42 Survivors appealed the School Board's decision to the Charter School Appeal Commission (CSAC), and an informal hearing (at which representatives of Survivors spoke and asserted due process concerns) was held before the CSAC. The CSAC declined to review evidence proffered by Survivors that was not before the School Board. Regarding Survivors BB, the CSAC voted that the School Board had competent, substantial evidence to support its finding regarding the severity of the audit report. The CSAC also voted that the School Board had good cause for the immediate termination of the Survivors BB charter. Finally, the CSAC voted to recommend denying Survivors' appeal of the termination of the Survivors BB charter. Regarding Survivors WPB, the CSAC voted that the School Board had competent, substantial evidence to support its finding regarding the severity of the audit report. The CSAC then voted that the School Board did not have good cause for the immediate termination of the Survivors WPB charter. Finally, the CSAC voted to recommend granting Survivors' appeal of the termination of the Survivors WPB charter. Following the hearing, the CSAC prepared written recommendations regarding both Survivors BB and Survivors WPB.
Survivors then appealed to the State Board of Education. The Board of Education reviewed the CSAC's recommendations regarding the termination of the Survivors charters at a meeting (at which representatives of Survivors again spoke after submitting a brief raising due process concerns). The Board of Education voted to uphold the CSAC's recommendation regarding Survivors BB. The Board of Education voted to overturn the CSAC's recommendation regarding Survivors WPB. Following the meeting, the Board of Education entered final orders upholding the termination of both the Survivors BB and Survivors WPB charters.
Although Survivors raises eleven issues, this appeal involves two key questions. The first is whether the Administrative Procedure Act (APA) applied to the School Board's charter termination process. The second is, if the APA did apply, what due process protections were required and whether they were provided by the School Board.
The first question to be answered in this appeal is whether the provisions of the APA apply to the charter school termination process set forth in Florida Statutes section 1002.33. The APA applies to agencies, including educational units, which include local school districts such as the School Board. § 120.52(1)(b)7., (6), Fla. Stat. The provisions of the APA apply "in all proceedings in which the substantial interests of a party are determined by an agency" (with some exceptions not relevant in this case). § 120.569(1), Fla. Stat. To establish that the substantial interests of a party will be determined by an agency "requires a showing that (1) the proposed action will result in injury-in-fact which is of sufficient immediacy to justify a hearing; and (2) the injury is of the type that the statute pursuant to which the agency has acted is designed to protect." Fairbanks, Inc. v. State, Dept. of Transp., 635 So.2d 58, 59 (Fla. 1st DCA 1994). Florida Statutes section 120.63 permits exemptions from the APA upon application of an agency under certain circumstances, but there is no indication that the School Board was so exempt (and the charters did not include an express APA exemption). Additionally, Florida Statutes section 120.81(1) provides APA exceptions for educational units, but none of these address the charter school termination process.
Under section 1002.33, a district school board may terminate a school charter for *43 reasons specified in the statute under section 1002.33(8), and the charter school may appeal to the Charter School Appeal Commission (CSAC) and then the State Board of Education based on the procedures set forth in section 1002.33(6). As part of the procedures set forth in section 1002.33(6), the statute expressly exempts the State Board of Education from the provisions of the APA in section 1002.33(6)(c) and the statute expressly exempts the CSAC from the provisions of the APA in section 1002.33(6)(f)2. Conspicuously absent in section 1002.33 is any provision exempting the School Board's termination decision from the provisions of the APA.
Based on our reading of chapter 120 and section 1002.33, we conclude that the process leading to the School Board's termination decision was subject to the APA. Under section 120.52, the School Board is an agency to which the APA generally applies. Under section 120.569, the School Board's decision is one to which the APA applies. This is because the charter school termination proceedings determine a substantial interest of Survivors, as it would suffer injury-in-fact on an immediate basis by the immediate termination of the charters and the injury resulting from the termination of the charters is of a type intended to be protected by section 1002.33 where it specifically addresses the charter termination process. Furthermore, the School Board charter termination process is not expressly exempted from the APA under section 120.63, subject to an APA exception under section 120.81, or otherwise exempted by the charters in question. Additionally, section 1002.33 does not indicate that the School Board's termination decision is exempt from the provisions of the APA, despite expressly exempting the CSAC and Board of Education termination appeal decisions. Therefore, the School Board was required to provide the due process protections inherent in the APA to Survivors during the process leading to the determination of good cause resulting in the notifications of immediate termination of the charter schools.
Now we must answer the second question central to this appeal, concerning what APA protections were required and whether the School Board provided those protections. The APA includes defined procedures for providing due process regarding decisions which determine substantial interests. Under section 120.569(2)(b), "[a]ll parties shall be afforded an opportunity for a hearing after reasonable notice of not less than 14 days," unless waived by consent of all parties. However, to receive such a hearing, a party is required to file a petition or request for a hearing. § 120.569(2)(a), (c), Fla. Stat. If a hearing is requested and the petition is granted, a hearing will be held and the "presiding officer has the power to swear witnesses and take their testimony under oath, to issue subpoenas, and to effect discovery." § 120.569(2)(f), Fla. Stat. Additionally, "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded, but all other evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs shall be admissible, whether or not such evidence would be admissible in a trial in the courts of Florida." § 120.569(2)(g), Fla. Stat. This evidence may be received in written form and testimony must be under oath. Id. Cross-examination is also permitted. § 120.569(2)(j), Fla. Stat. Additional procedures apply in cases involving disputed issues of material fact. § 120.57(1), Fla. Stat.
Other provisions of the APA apply more generally to agency action outside the realm of decisionmaking that determines substantial interests. Under section *44 120.525, an agency is required to "give notice of public meetings, hearings, and workshops by publication in the Florida Administrative Weekly not less than 7 days before the event" and include a "statement of the general subject matter to be considered," unless the meeting is held on an emergency basis. Agendas for meetings are also required to be prepared seven days in advance. § 120.525(2). Agencies may hold meetings on an emergency basis if there is "an immediate danger to the public health, safety, or welfare" which requires immediate action. § 120.525(3), Fla. Stat. Under these circumstances, the agency may "give notice of such a meeting by a procedure that is fair under the circumstances and necessary to protect the public interest," if that procedure provides "at least the procedural protection given by other statutes, the State Constitution, or the United States Constitution," "the agency takes only that action necessary to protect the public interest," and "the agency publishes in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure is fair under the circumstances." § 120.525(3), Fla. Stat.
Also applicable in this case are statutes that address school board procedures in general and the charter school termination process in particular. Some of these statutes are found in Florida Statutes chapter 1001 addressing K-20 Governance. Florida Statutes section 1001.372 addresses district school board meetings. Under section 1001.372(1), the school board may convene for special meetings as called by the superintendent, upon request by the chair of the school board, or upon request of the majority of the school board. Section 1001.372(2)(c) provides for due public notice of school board meetings which consists of "publication in a newspaper of general circulation in the county or in each county where there is no newspaper of general circulation in the county and announcement over at least one radio station whose signal is generally received in the county, a reasonable number of times daily during the 48 hours immediately preceding the date of such meeting, or by posting notice at the courthouse door if no newspaper is published in the county, at least 2 days prior to the meeting." The APA, in section 120.81(1)(j) provides an APA exception for the agendas of school board meetings, which "shall be prepared upon the calling of the meeting, but not less than 48 hours prior to the meeting."
The rest of the relevant statutes are found in section 1002.33. Section 1002.33(8)(a) addresses termination of school charters and allows for termination on the same bases included in the Survivors charters, including "other good cause shown." Section 1002.33(8)(d), like the Survivors charters, allows for immediate termination based on good cause shown or a threat to the health, safety, or welfare of students. The statute does not discuss any requirements or timelines for notice or hearings in cases of immediate charter termination. However, the charters themselves require twenty-four hours' notice prior to immediate termination. Additionally, the charters expressly exclude immediate terminations from the procedures governing terminations in general as set forth in section 1002.33(8)(b) and the charters. These general provisions include ninety days' notice and informal hearings upon request prior to termination.
The second question central to this appeal can be resolved by analyzing the interaction between chapters 120, 1001, and 1002. Chapters 120 and 1001 are easily reconcilable. Although section 120.525 requires seven days' notice of agency meetings and the preparation of the meeting *45 agenda at the same time, section 120.81(1)(j) clearly provides an APA exception for school board meetings indicating that the agenda must be prepared upon the calling of the meeting which may not be less than 48 hours prior to the meeting. As such, school boards are excepted from the notice and agenda requirements for meetings under the APA. This is reflected in section 1001.372(2)(c) which allows notice of school board meetings by publication forty-eight hours in advance in a newspaper and preparation of the agenda at the same time. As such, school board meetings are excepted from the notice and agenda requirements of the APA. However, although the School Board may have properly noticed its special meeting under these provisions, an agency meeting is clearly separate in the APA from a hearing necessitated by an agency determining the substantial interests of a party, as the latter is found in section 120.569 while the former is found in section 120.81.
The relationship between chapters 120 and 1002 is much more complex. Much of the complexity stems from the seeming clash between the immediate termination provisions of section 1002.33(8)(d) and the notice and hearing requirements of section 120.569(2)(b). If indeed as we concluded above, school board decisions terminating charters are subject to the APA, how can immediate termination, as described in the charters to require only twenty-four hours' notice, possibly be cognizable under the APA procedures requiring fourteen days' notice of a hearing regarding a determination of substantial interests? The answer to this question lies in the fact that immediate termination is cognizable under the charters with twenty-four hours notice only after the School Board has determined that good cause for termination has been shown following fourteen days notice and a hearing. As such, the School Board's process for determining whether good cause has been shown is subject to APA requirements. If these requirements are met, a charter can be terminated with just twenty-four hours notice, rather than subject to the full ninety-day procedure for termination.
We reach this conclusion based on the fact that section 1002.33(8)(d) does not provide a timeline for notice and hearing, other than by excluding itself from the general procedure for terminating charters which requires ninety days' notice. Under the statute, immediate means only something less than ninety days, which clearly encompasses the fourteen-day notice requirement of section 120.569(2)(b) as applied to the School Board's determination of good cause for termination (plus twenty-four hours' notice of termination once good cause is shown based on the charters). The APA does not provide for an abbreviated procedure in cases of emergency where substantial interests are to be determined by an agency; the only emergency procedure is set forth in the section governing agency meetings in general. As such, it seems that if substantial interests are affected and the APA applies, as we have determined, immediate termination can only mean termination following a determination of good cause subject to the fourteen-day notice requirement and accompanying APA procedures (especially where such a requirement allows for more immediate termination than the general termination procedure). As much as the audit report findings may have reflected serious financial transgressions, termination following a determination of good cause can only be so immediate as to afford due process, and due process can only be afforded with fourteen days' notice and a hearing under the APA.
In the case at bar, it is clear that the notice and procedures provided for by the APA were not observed in Survivors' case, *46 as its charters were terminated at a school board meeting that was not conducted like a hearing determining substantial interests which would involve the submission of evidence and cross-examination. The School Board may have very well complied with the requirements for calling a special meeting of the school board, but it did not follow the requirements for conducting a hearing to determine whether good cause had been shown to terminate Survivors' charters. As such, we reverse and remand this case so that the termination of Survivors' charters based on a determination of good cause shown can be considered following proper notice and subject to the due process protections of the APA. We decline to comment on the more specific due process and evidentiary issues raised by Survivors (those issues other than issues two, three, and six which we reverse) as we anticipate that they will be addressed as part of the proper overall procedure under the APA on remand.
Reversed and Remanded.
GUNTHER, FARMER, JJ., and HOROWITZ, ALFRED J., Associate Judge, concur.