PARIENTE, J.
 

 This case involves charter schools; specifically the procedures a charter school sponsor must follow when it decides to “immediately” terminate a charter pursuant to section 1002.33(8)(d), Florida Statutes (2005), because “good cause has been shown” or the “health, safety, or welfare of the students is threatened.” § 1002.33(8)(d), Fla. Stat.
 
 [1]
 
 The specific issue in this case is whether a school board, as a charter school sponsor, must utilize the provisions of Florida’s Administrative Procedure Act (APA), chapter 120, Florida
 
 *1224
 
 Statutes, when immediately terminating a charter. The Fourth District Court of Appeal in
 
 Survivors Charter Schools, Inc. v. School Board of Palm Beach County,
 
 968 So.2d 39 (Fla. 4th DCA 2007), concluded that the APA must be followed when a school board immediately terminates a charter school charter under section 1002.33(8)(d) and concluded that “immediately” essentially meant anything less than ninety days.
 
 [2]
 

 The district court’s decision expressly affects school boards as a class of constitutional or state officers under article IX, section 4(b), Florida Constitution. Therefore, this Court has jurisdiction to review the district court’s decision.
 
 See
 
 art. V, § 3(b)(3), Fla. Const.
 

 The resolution of this issue is based on statutory interpretation. After a careful review of the governing charter schools statute, pertinent provisions of the APA, and our application of principles of statutory construction to ascertain legislative intent, we conclude that the Legislature did not intend for the procedures of the APA to apply to the immediate termination of charter school charters under section 1002.33(8)(d). Accordingly, we quash the decision of the Fourth District and remand for proceedings consistent with this opinion. On remand, the Fourth District may consider any of the other issues raised by Survivors Charter Schools but not reached, including specific due process and evidentiary issues related to the procedures followed by the School Board in this case.
 

 FACTS AND PROCEDURAL HISTORY
 

 This appeal arose out of the immediate termination by the School Board of Palm Beach County (School Board) of the charters for two charter schools in Palm Beach County, based on a finding of severe fiscal mismanagement in both charter schools. Survivors Charter Schools, Inc. (Survivors), operated both charter schools, Survivors Charter School West Palm Beach (Survivors WPB) and Survivors Charter School Boynton Beach (Survivors BB), under ten-year charters granted in 2001 and 2003, respectively. Both charters included provisions for immediate termination after twenty-four hours’ notice. Although there had been a history of the School Board’s concerns regarding the fiscal management of both schools, the precipitating event for the immediate termination was an audit report completed on January 13, 2006, which included fourteen findings of fiscal mismanagement by Survivors.
 
 [3]
 
 The School Board considered the audit report along with the “Superintendent’s Recommendation to Immediately Terminate Charter Agreement” due to the “severity of the audit findings” at a specially noticed
 
 *1225
 
 meeting on January 25, 2006.
 
 [4]
 
 At that meeting, the School Board heard public comments as well as comments from individuals representing Survivors, but there was no presentation of testimony under oath and no formal admission of documents into evidence. At the conclusion of the meeting, the School Board voted to terminate the charters and a notice of immediate termination was then hand-delivered to each school. The notice indicated the termination was “for ‘good cause’ because of the severity of the Audit Findings,” based on section 1002.33(8)(d) as well as the charter provisions, and would become effective in twenty-four hours.
 

 Survivors appealed to the State Board of Education, which then referred the matter to the Charter School Appeal Commission (CSAC). The CSAC held an informal hearing where representatives of Survivors spoke but unsuccessfully attempted to proffer evidence. It was the CSAC’s position, based upon the Florida Charter School Appeals Commission Guidelines, that no additional evidence could be considered.
 
 [5]
 
 Ultimately, the CSAC voted that the School Board had “competent, substantial evidence to support its finding regarding the severity of the audit findings.” However, it concluded that although the School Board had good cause for the immediate termination of the Survivors BB charter, it did not have good cause for the immediate termination of the Survivors WPB charter. The CSAC prepared written recommendations regarding both charter schools, and the matter proceeded to the State Board of Education for a final decision. The State Board of Education then held a meeting at which it reviewed the recommendations. The State Board of Education took comments from representatives of Survivors, who raised due process concerns as to the procedures by which the charters had been terminated. The State Board ultimately voted to uphold the immediate termination of both charters, rejecting the CSAC’s contrary recommendation as to the Survivors WPB charter. Final orders were entered from which Survivors appealed to the Fourth District Court of Appeal.
 

 Although multiple issues were raised on appeal, the Fourth District determined two “key” issues: “whether the Administrative Procedure Act (APA) applied to the School Board’s charter termination process”; and, if the APA did apply, “what due process protections were required and whether they were provided by the School Board.” 968 So.2d at 42. After reviewing both the APA and the Charter School statute, the Fourth District concluded that “the process leading to the School Board’s termination decision was subject to the APA.”
 
 Id.
 
 at 43. Noting that under sec
 
 *1226
 
 tion 1002.33(8)(c),
 
 [6]
 
 a charter school sponsor may terminate a charter on nonimmediate grounds after giving ninety days notice in writing, the district court concluded, by reading the two provisions together, that for “immediate” terminations:
 

 Under [section 1002.33(8)(d) ],
 
 immediate means only something less than ninety days,
 
 which clearly encompasses the fourteen-day notice requirement of section 120.569(2)(b) as applied to the School Board’s determination of good cause for termination (plus twenty-four hours’ notice of termination once good cause is shown based on the charters).
 

 Id.
 
 at 45 (emphasis added). The district court summarized the APA provisions that it held should apply in immediate charter school terminations:
 

 The APA includes defined procedures for providing due process regarding decisions which determine substantial interests. Under section 120.569(2)(b), “[a]ll parties shall be afforded an opportunity for a hearing after reasonable notice of not less than 14 days,” unless waived by consent of all parties. However, to receive such a hearing, a party is required to file a petition or request for a hearing. § 120.569(2)(a), (c), Fla. Stat. If a hearing is requested and the petition is granted, a hearing will be held and the “presiding officer has the power to swear witnesses and take their testimony under oath, to issue subpoenas, and to effect discovery.” § 120.569(2)(f), Fla. Stat.... [The] evidence may be received in written form and testimony must be under oath.
 
 Id.
 
 Cross-examination is also permitted. § 120.569(2)(j).
 
 [7]
 
 Additional procedures apply in cases involving disputed issues of material fact. § 120.57(1), Fla. Stat.
 

 968 So.2d at 43. The district court then concluded:
 

 [I]f substantial interests are affected and the APA applies, as we have determined, immediate termination can only mean termination following a determination of good cause subject to the fourteen-day notice requirement and accompanying APA procedures (especially where such a requirement allows for more immediate termination than the general termination procedure). As much as the audit report findings may have reflected serious financial transgressions, termination following a deter
 
 *1227
 
 mination of good cause can only be so immediate as to afford due process, and due process can only be afforded with fourteen days’ notice and a hearing under the APA.
 

 Id.
 
 at 45.
 

 After deciding that the APA applied to the procedures the School Board was mandated to follow before “immediately” terminating a charter, the Fourth District then analyzed what APA protections applied. It concluded that under the APA, the School Board was required to provide “reasonable notice of not less than 14 days” and to hold a quasi-judicial hearing under the APA, where testimony would be taken under oath, subpoenas issued and cross-examination could occur. Because the School Board clearly did not follow the APA, the Fourth District reversed and remanded “so that the termination of Survivors’ charters based on a determination of good cause shown can be considered following proper notice and subject to the due process protections of the APA.” In so holding, the Fourth District expressly declined to comment on the other specific due process and evidentiary issues raised by Survivors.
 
 Id.
 
 at 46.
 

 OVERVIEW
 

 The question before this Court is whether the School Board must adhere to the Administrative Procedure Act when it decides to immediately terminate a charter school charter under section 1002.33(8)(d), Florida Statutes (2005), or whether it is required to follow only the specific procedures set forth in various provisions contained in section 1002.33.
 
 [8]
 
 The decision of the Fourth District, if upheld, would require pretermination notice and accompanying APA procedures — procedures that could take up to ninety days.
 

 As a preliminary matter, certain parties have urged this Court to consider matters of policy in reaching a decision as to which statutory procedures control the immediate termination of charter school charters. Survivors contends that not requiring adherence to the APA in immediate terminations may allow the school boards to operate on “whimsical notions” of due process at the “leisure” of the superintendent. On the other hand, the School Board contends that requiring application of the APA to immediate terminations could cause irreparable harm to students or public funds. They, along with the amici, assert that the type of quasi-judicial proceeding called for under the APA “can realistically consume several months,” involving as it might “pleadings, motion practice, discovery, quasi-judicial hearing, post-hearing submittals, a final order, etc.”
 

 Amicus Pacific Legal Foundation weighed in to argue against application of the APA to charter schools. Its amicus brief advocates the benefits of charter schools and argues that burdening the charter schools with the costly, complex, and time-consuming requirements of the APA reduces the flexibility in public education that the charter school statutory scheme was intended to provide and conflicts with the express intent of the Legislature in the charter schools statute that a school board may “immediately” terminate a charter.
 

 We do not express any opinion as to these policy considerations, although
 
 *1228
 
 they may have merit, because this case does not turn on our view of the “better” policy, but turns solely on statutory interpretation. In statutory construction, our task is to ascertain the meaning of the phrases and words used in a provision, not to substitute our judgment for that of the Legislature.
 
 See, e.g., Tillman v. State,
 
 984 So.2d 1263, 1270 (Fla.2006) (“[I]t is not this Court’s function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute.” (quoting
 
 State v. Rife,
 
 789 So.2d 288, 292 (Fla.2001))).
 

 Because the provisions of section 1002.38, the charter schools statute, are central to our analysis, we first discuss the general provisions of that statute. Within that discussion, we will focus primarily on the provisions in the statutory scheme that relate to termination of charter school charters. We then provide an overview of the APA and the principles that govern its applicability. Finally, using principles of statutory construction, we focus on whether the Legislature intended that the procedures set forth in the APA should be followed in “immediately” terminating charter school charters under section 1002.33(8)(d).
 

 THE CHARTER SCHOOLS STATUTE
 

 Charter schools are nonsectarian public schools that operate under a performance contract (charter) with a public sponsor— either a district school board or a university.
 
 See
 
 § 1002.33(1), (7), (9)(a), Fla. Stat. (2005).
 
 [9]
 
 Charter schools were first authorized in Florida in 1996 in chapter 228, Florida Statutes.
 
 See
 
 ch. 96-186, § 1, Laws of Fla. In 2002, the charter school statute was moved to chapter 1002.
 
 See
 
 ch. 2002-387, § 98, Laws of Fla. Charter schools are considered “schools of choice,” in that their creation is now authorized under Part III of chapter 1002, Florida Statutes, titled “Educational Choice.” That part provides for several different types of schools of choice, including charter schools. One of the legislatively stated guiding principles for charter schools is that they “provide[ ] parents with the flexibility to choose among diverse educational opportunities within the state’s public schools system.” § 1002.33(2), Fla. Stat. (2005). Private schools, parochial schools, and home education programs are not eligible for charter school status. § 1002.33(3)(b), Fla. Stat. (2005).
 

 Under the charter school statute, funding for students attending charter schools is provided on the same basis as for students in basic or special public programs, § 1002.33(17), Fla. Stat., and charter schools are eligible for capital outlay funding under chapter 1013.
 
 See
 
 § 1002.33(19), Fla. Stat. (2005). The duties of the district school board include
 
 *1229
 
 monitoring the revenues and expenditures of the charter schools.
 
 See
 
 § 1002.33(5)(b)2, Fla. Stat. (2005).
 

 Section 1002.33 also sets forth the requirements for eligible students and for employees of charter schools, bases for funding, requirements for charter school facilities, and procedures for charter school performance review.
 
 See
 
 § 1002.33(10), (18), (23), Fla. Stat. (2005). Finally, section 1002.33 sets forth detailed procedures for the creation and operation of a charter school, as well as termination procedures that apply when a sponsor determines that a charter must be terminated. § 1002.33(6)-(8), Fla. Stat. (2005). Thus, the statute is comprehensive in its treatment of all aspects of the creation, operation, and termination of charter schools. Within this detailed statutory scheme governing charter schools, we focus primarily on the provisions relating to immediate termination of charter school charters and the process set forth in the statute for appeal of charter school terminations.
 

 CHARTER SCHOOL TERMINATION PROCEDURES
 

 Central to our decision in this case are the special termination procedures for charter school charters, including when a charter is not renewed or is to be terminated under nonemergency circumstances, as well as procedures for immediate termination of charters for good cause or where the health, safety or welfare of the students is threatened. These two types of terminations are treated in different subsections of 1002.33(8). Section 1002.33(8)(c), Florida Statutes (2005), pertains to all terminations other than those requiring immediate action and provides:
 

 (c) At least 90 days prior to renewing or terminating a charter, the sponsor shall notify the governing body of the school of the proposed action in writing. The notice shall state in reasonable detail the ground for the proposed action and stipulate that the school’s governing body may, within 14 calendar days after receiving the notice, request an informal hearing before the sponsor. The sponsor shall conduct the informal hearing within 30 calendar days after receiving a written request. The charter school’s governing body may, within 14 calendar days after receiving the sponsor’s decision to terminate or refuse to renew the charter, appeal the decision pursuant to the procedure established in subsection (6).
 

 Section 1002.33(8)(d), Florida Statutes (2005), governing immediate terminations of charters, which was in effect when the School Board terminated Survivors’ charters, provides:
 

 (d) A charter may be terminated immediately if the sponsor determines that good cause has been shown or if the health, safety, or welfare of the students is threatened. The school district in which the charter school is located shall assume operation of the school under these circumstances. The charter schools governing board may, within 14 days after receiving the sponsors decision to terminate the charter, appeal the decision pursuant to the procedure established in subsection (6).
 

 § 1002.33(8)(d), Fla. Stat. (2005).
 
 [10]
 
 Both termination provisions make reference to an appeal pursuant to subsection (6) of section 1002.33. Section 1002.33(6)(c) pro-
 

 
 *1230
 
 vides that an appeal of the determination of a charter school sponsor, such as the School Board, may be taken to the State Board of Education.
 
 See
 
 § 1002.33(6)(e), Fla. Stat. (2005). Under the statute, when an appeal is filed, the State Board of Education must convene a meeting of the Charter School Appeal Commission (CSAC), which will study and make a recommendation to the State Board of Education regarding its decision about the pending appeal. § 1002.33(6)(c), Fla. Stat. (2005).
 

 The stated purpose of the CSAC is to “assist the commissioner and the State Board of Education with a fair and impartial review of appeals by applicants whose charter applications have been denied, [or] whose charter contracts have not been renewed or have been terminated by their sponsors.” § 1002.33(6)(e)(l), Fla. Stat. (2005). The CSAC members “shall thoroughly review the materials presented to them from the appellant and the sponsor” and may “request information to clarify the documentation, presented to it.” § 1002.33(6)(e)5, Fla. Stat. (2005). The CSAC must provide its recommendation to the State Board of Education and must include a “fact-based justification for the recommendation.”
 
 Id.
 
 The statute expressly provides that “[t]he decision of the Charter School Appeal Commission is not subject to the provisions of the Administrative Procedure Act.” § 1002.33(6)(e)2, Fla. Stat. (2005).
 

 Once the recommendation of the CSAC is provided to the State Board of Education, the Board must either accept or reject the decision of the district school board no later than ninety days after the appeal is filed. The district school board is mandated to implement the decision of the State Board of Education. § 1002.33(6)(c), Fla. Stat. (2005). While “[t]he decision of the State Board of Education is not subject to the provisions of the Administrative Procedure Act,” § 1002.33(6)(c), Fla. Stat. (2005), it is “final action subject to judicial review.” § 1002.33(6)(d), Fla. Stat. (2005). Because the resolution of this case requires us to determine whether the Legislature intended that the chapter 120 APA procedures apply to immediate termination decisions of the charter school sponsor, we proceed to a brief examination of the APA.
 

 THE ADMINISTRATIVE PROCEDURE ACT
 

 The Administrative Procedure Act, set forth in chapter 120, Florida Statutes, is generally applicable to all forms of agency decision making. Soon after enactment of the Administrative Procedure Act, the First District confirmed that the APA “enforces its discipline on all agency action,
 
 *1231
 
 unless specifically exempted, which affects the substantial interests of a party.”
 
 Graham Contracting, Inc. v. Dep’t of Gen. Servs.,
 
 363 So.2d 810, 812 (Fla. 1st DCA 1978);
 
 see also Legal Envtl. Assistance Found., Inc. v. Bd. of County Conmi’rs,
 
 642 So.2d 1081, 1083 n. 2 (Fla.1994) (“The Administrative Procedure Act applies to all administrative agencies in Florida.”); § 120.50, Fla. Stat. (2005) (indicating that the Legislature and courts are exempt from application of the APA). No one disputes that a school board is an “agency” as that term is defined in the APA. § 120.52(l)(b)3, Fla. Stat. (2005) (defining “agency” to include “Board”);
 
 see also Volusia County Sch. Bd. v. Volusia Homes Builders Ass’n, Inc.,
 
 946 So.2d 1084, 1089 (Fla. 5th DCA 2006) (holding that county school boards are agencies).
 

 The APA “was intended to simplify the administrative process and provide the public with a more certain administrative procedure, thereby insuring that the public would receive due process and significantly improved fairness of treatment.”
 
 Machules v. Dep’t of Admin.,
 
 523 So.2d 1132, 1136-37 (Fla.1988). The APA prescribes a multitude of procedures to be followed by agencies in enacting regulatory provisions pursuant to legislatively granted authority, for parties challenging agency rules, and in agency decision-making in matters that affect the substantial interests of persons who are regulated by or do business with an agency. The broad scope of the APA and the many specific procedures that it requires agencies to follow need not be examined in depth here. Pertinent to our review are the provisions of section 120.569, Florida Statutes (2005), which generally governs agency action and procedure to be followed in making decisions that determine the substantial interests of a party, and section 120.57, Florida Statutes (2005), which prescribes procedures for fact-finding hearings.
 

 Substantial interests of a party as referred to in section 120.569 are determined where “(1) the proposed action will result in injury-in-fact which is of sufficient immediacy to justify a hearing; and (2) the injury’is of the type that the statute pursuant to which the agency has acted is designed to protect.”
 
 Fairbanks, Inc. v. State Dep’t of Transp.,
 
 635 So.2d 58, 59 (Fla. 1st DCA 1994). In the event that there are disputed issues of material fact to be determined, and a hearing has been requested under section 120.569(2)(a), Florida Statutes (2005), an adversarial hearing must be provided under section 120.57, after reasonable notice is given not less than fourteen days before the hearing. § 120.569(2)(b), Fla. Stat. (2005). The notice must contain certain information including the time, place, and nature of the healing and the legal authority under which the hearing is to be held. A number of post-hearing procedures can follow; and, where the case is presented to an administrative law judge, those procedures involve preparation of a recommended order by the administrative law judge, filing of exceptions to the recommended order by the parties, and preparation and issuance of a final order by the agency making the final decision. A final order entered under the APA is then immediately reviewable in the district court of appeal. § 120.68, Florida Statutes (2005).
 

 It is this general APA procedure for notice and hearing set forth in sections 120.569 and 120.57, Florida Statutes, that the Fourth District concluded must be followed by the School Board in immediately terminating a charter under section 1002.33(8)(d), Florida Statutes (2005).
 
 *1232
 
 However, the Fourth District acknowledged that the “relationship between chapters 120 and 1002 is ... complex.”
 
 Survivors,
 
 968 So.2d at 45. Recognizing that an agency must follow the APA unless exempted by the Legislature, the Fourth District attempted to harmonize the provisions of the APA and section 1002.33 by determining that the School Board could only terminate a charter under section 1002.33(8)(d) after compliance with section 120.569, and that an “immediate” termination in the charter schools statute “means only something less than ninety days.”
 
 Id.
 

 While we endorse the general principle that absent a specific exemption the APA applies to agency action, that principle applies where there are no other countervailing indications of legislative intent.
 
 [11]
 
 We must now determine if the Fourth District’s attempt to harmonize the APA with the “immediate” termination provisions of section 1002.33(8)(d) is consistent with legislative intent relating to charter schools. We thus proceed to a statutory construction analysis.
 

 STATUTORY CONSTRUCTION ANALYSIS
 

 Because the question presented solely involves interpretation of a statute, it is subject to de novo review.
 
 See Fla. Dep’t of Envtl. Prot. v. ContractPoint Fla. Parks, LLC,
 
 986 So.2d 1260, 1264 (Fla. 2008) (citing
 
 Heart of Adoptions, Inc. v. J.A.,
 
 963 So.2d 189, 194 (Fla.2007)). In matters of statutory construction, we have repeatedly recognized that legislative intent is the polestar that guides the Court.
 
 Bautista v. State,
 
 863 So.2d 1180, 1185 (Fla.2003). While that principle is undisputed, the actual application of that principle is at times difficult. In this case, if the Legislature had expressly stated that the APA governs terminations under section 1002.33(8)(d), this case would not be before us. Conversely, if the Legislature had specifically exempted school boards from the APA, as the Legislature did in the case of the Charter School Appeals Commission and the State Board of Education, there would also be no need for statutory construction to determine legislative intent.
 
 [12]
 
 The answer would be clear. However, in this case, despite the comprehensive statu
 
 *1233
 
 tory scheme set forth in section 1002.33 for the creation, operation, and termination of charter schools, the Legislature neither expressly subjected the school boards and other charter school sponsors to the APA in matters involving immediate terminations, nor expressly exempted school boards from the APA requirements.
 

 We determine that within the express text of section 1002.33, the Legislature has given clear indication of legislative intent as to procedures to be followed relative to charter schools by providing a comprehensive, detailed statutory scheme that does not intend that the provisions of the APA be incorporated into the charter school termination process. In reaching this conclusion, we are mindful of the principle that specific statutes covering a particular subject area will control over a statute covering the same subject in general terms.
 
 See Maggio v. Fla. Dep’t of Labor & Empl. Sec.,
 
 899 So.2d 1074, 1079 (Fla.2005).
 

 Basic to our examination of statutes, and an important aspect of our analysis here, is the “elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.”
 
 Gulfstream Park Racing Ass’n v. Tampa Bay Downs, Inc.,
 
 948 So.2d 599, 606 (Fla.2006) (quoting
 
 Hechtman v. Nations Title Ins. of N.Y.,
 
 840 So.2d 993, 996 (Fla.2003)). In this regard, we focus first on the word “immediately” in section 1002.33(8)(d). That section expressly states that a sponsor, here the School Board, may “immediately” terminate a charter school charter upon good cause shown or where the health, safety, or welfare of the students is threatened. § 1002.33(8)(d), Fla. Stat. (2005). The Survivors charters then impose only a twenty-four-hour notice requirement upon such an immediate termination.
 

 “Where, as here, the legislature has not defined the words used in a [statute], the language should be given its plain and ordinary meaning.”
 
 Fla. Birth-Related Neurological Injury Compensation Ass’n v. Fla. Div. of Admin. Hearings,
 
 686 So.2d 1349, 1354 (Fla.1997). The word “immediately” in section 1002.33(8)(d) is not defined, and it is therefore “appropriate to refer to dictionary definitions when construing statutes” in order to ascertain the plain and ordinary meaning of words used there.
 
 Barco v. School Bd. of Pinellas County,
 
 975 So.2d 1116, 1122 (Fla. 2008);
 
 see also Rollins v. Pizzarelli,
 
 761 So.2d 294, 298 (Fla.2000) (“When necessary, the plain and ordinary meaning ‘can be ascertained by reference to a dictionary.’ ” (quoting
 
 Green v. State,
 
 604 So.2d 471, 473 (Fla.1992))). The word “immediately” means “without interval of time.”
 
 See Merriam Webster’s Collegiate Dictionary
 
 621 (11th ed.2003). Accordingly, the Legislature’s use of the word “immediately” in section 1002.33(8)(d) indicates that the charter may be terminated “without interval of time.” Therefore, termination of a charter “immediately” means something different than termination accomplished over a period of weeks or months or, even as interpreted by the Fourth District, “only something less than ninety days,” which is the time frame established for non-emergency terminations of charter school charters.
 
 See Survivors,
 
 968 So.2d at 45.
 

 Our conclusion that “immediate” contemplates prompt action is strengthened
 
 *1234
 
 by the fact that the reasons for which section 1002.33(8)(d) may be invoked are limited to situations where “the health, safety, or welfare of the students is threatened” and where “good cause” for immediate termination is shown. As to situations involving threats to the health, safety or welfare of students, the emergency nature of the circumstances are apparent, as well as the need for prompt action. As to “good cause” for immediate termination, the School Board agrees that in the context of this statute, “good cause” would have to be something more than the other legally sufficient causes that govern non-emergency terminations, and that the circumstances must be exigent so as to necessitate immediate action.
 
 [13]
 
 If grounds necessitating immediate action are not present, then the district school board must utilize the provisions of section 1002.33(8)(e). On the other hand, when emergency-type situations are present, then the chance of harm to the students increases and the concomitant need for immediate action is obvious, thereby justifying immediate termination under section 1002.33(8)(d). Thus, in determining the legislative intent behind section 1002.33(8)(d), we look not just at the use of the word “immediately” but at the fact that this subsection addresses the type of circumstances requiring an immediate response, such as a threat to the health, safety, or welfare of the students.
 

 Further, because we are dealing with an entire statutory scheme for granting and terminating charters, we do not look at only one portion of the statute in isolation but we review the entire statute to determine intent.
 
 See GTC, Inc. v.
 
 Edgar; 967 So.2d 781, 787 (Fla.2007). This is in accord with the principle that we “give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.”
 
 Heart of Adoptions,
 
 963 So.2d at 199 (quoting
 
 Woodham v. Blue Cross & Blue Shield of Fla., Inc.,
 
 829 So.2d 891, 898 (Fla.2002)). It is thus significant to our analysis that the Legislature set forth detailed procedures in section 1002.33(8)(c) for the school boards to follow for nonemergency termination and nonrenewal of a charter. Survivors concedes, and we agree, that because the Legislature set forth those detailed procedures in section 1002.33(8)(c), the APA would
 
 not
 
 apply to nonemergen-cy terminations under that subsection. At the same time, Survivors urges us to find, as did the Fourth District, that when it comes to emergency terminations under section 1002.33(8)(d), the procedures of the
 

 
 *1235
 
 APA would apply.
 
 [14]
 

 We are not required to abandon either our common sense or principles of logic in statutory interpretation.
 
 See, e.g., Bautista,
 
 863 So.2d at 1185 (applying a “common-sense approach” to statutory interpretation in order to give effect to legislative intent). We consider Survivors’ view to be contrary to common sense in that a school board would be subjected to more extensive procedures under the APA when emergency circumstances are present than it would be subjected to for all other terminations under the procedures set forth in section 1002.33(8)(c).
 

 Finally, we also discuss due process considerations, in part because the Fourth District stressed its concern that the charter school termination procedures must provide due process to the school whose charter is being terminated and because the court appeared to conclude that due process could be provided only by compliance with the APA. We are always mindful of our obligation to construe provisions of legislative acts consistent with the basic tenets of fairness and due process.
 
 See Larimore v. State,
 
 2 So.3d 101, 116 (Fla.2008)
 
 revised on denial of rehearing,
 
 34 Fla. L. Weekly S131 (Fla. Jan. 29, 2009) (citing
 
 State v. Atkinson,
 
 831 So.2d 172, 174 (Fla.2002)). We conclude, however, that constitutional considerations do not require us to find that the procedures mandated by the APA must apply in charter school terminations.
 

 While the notice and hearing procedures contained in the APA are crafted in part to provide due process in administrative proceedings, chapter 120 is not the sole method by which a party may receive due process. The APA is a creature of the Legislature, as is the charter schools statute. Just as the APA may be evaluated to determine what due process protections are provided there, the charter schools statute is subject to a similar review. As we explained in
 
 Keys Citizens For Responsible Government, Inc. v. Florida Keys Aqueduct Authority,
 
 795 So.2d 940 (Fla.2001):
 

 In order to determine what process is constitutionally required, the Court “must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.”
 
 Cafeteria & Restaurant Workers Union,
 
 367 U.S. at 895, 81 S.Ct. 1743. Three factors are relevant in determining what process is constitutionally due: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government’s interest.
 

 Id.
 
 at 948-49. Due process “is not a technical concept with a fixed content unrelated to time, place and circumstances.”
 
 Id.
 
 
 *1236
 
 at 948 (quoting
 
 Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy,
 
 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). “Instead, ‘due process is flexible and calls for such procedural protections as the particular situation demands.’ ”
 
 Id.
 
 (quoting
 
 Morrissey v. Brewer,
 
 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Most importantly, “[t]he specific parameters of the notice and the opportunity to be heard required by procedural due process are not evaluated by fixed rules of law, but rather by the requirements of the particular proceeding.”
 
 Id.
 

 In finding that the APA does not apply to immediate charter school terminations, we reiterate the Legislature’s clearly stated purpose of section 1002.33(8)(d) — to provide school boards and other charter school sponsors with the ability to “immediately” terminate charters where there are emergency-type circumstances, such as those that threaten the health, safety or welfare of students, or where other good cause necessitating immediate action exists. The principles we discuss have led us to an interpretation that gives the greatest effect to the actual legislative language set forth in section 1002.33, more fully accomplishes the legislative purpose apparent in that provision, and honors the detailed termination and appeal statutory scheme.
 

 CONCLUSION
 

 We conclude that the Legislature did not intend that school boards and other charter school sponsors follow the APA when immediately terminating charter school charters for good cause or where the health, safety or welfare of the students is threatened. The Legislature has provided a comprehensive scheme specifically applicable to all aspects of charter schools. Within that comprehensive scheme, the Legislature has provided charter school sponsors with a procedure to immediately terminate the charter where the health, safety, or welfare of the students is threatened or where other good cause circumstances exist that require immediate action.
 

 The district court’s interpretation that a charter may be “immediately” terminated, but only after fourteen days’ notice and an administrative hearing, a process the district court recognized may consume up to ninety days, engrafts requirements upon the termination procedure that are inconsistent with the overall statutory scheme for charter schools. The use of APA procedures for “immediate” terminations is inconsistent with the expressed legislative intent that a school board act “immediately” when emergency-type circumstances arise such as those that threaten the health, safety or welfare of the students. Therefore, we reject the district court’s conclusion that “immediate” termination under section 1002.33(8)(d) “means only something less than ninety days.”
 
 Survivors,
 
 968 So.2d at 45. Further, to the extent that the Fourth District held that due process can only be satisfied by compliance with the APA, we reject that contention as a basis for statutory construction.
 

 We expressly do not address the issue of whether the termination procedures employed by the School Board in this case unconstitutionally deprived Survivors of due process of law, as Survivors claims, by failing to provide sufficient notice of a hearing, failing to provide a quasi-judicial hearing, and failing to provide a sufficient legal basis to find good cause for termination. These and any other issues that were raised and not reached by the district
 
 *1237
 
 court or this Court may be considered and decided by the district court upon remand of this proceeding.
 
 [15]
 

 Accordingly, we quash the decision of the Fourth District Court of Appeal and remand for proceedings consistent with this opinion. We further reverse the order of the district court that awarded prevailing party attorney’s fees to Survivors.
 

 It is so ordered.
 

 QUINCE, C.J., and WELLS, LEWIS, CANADY, and POLSTON, JJ., concur. LABARGA, J., did not participate.
 

 [1]
 

 . Section 1002.33(8)(d), Florida Statutes (2005), provided in pertinent part as follows:
 

 A charter may be terminated immediately if the sponsor determines that good cause has been shown or if the health, safety, or welfare of the students is threatened.
 

 [2]
 

 . This Court granted discretionary review in
 
 School Board of Palm Beach County v. Survivors Charter Schools, Inc.,
 
 977 So.2d 577, 2008 WL 1746020 (Fla.2008). The Florida School Boards Association, the Florida State Board of Education, and the Pacific Legal Foundation appeared as Amici Curiae in this case, are all in favor of the School Board's position that the APA does not apply.
 

 [3]
 

 . In December 2005 a draft audit report was provided to Survivors and responses requested. Survivors provided written responses to the district auditor on December 30, 2005. On January 23, 2006, the School Board published notice of a special meeting to be held on January 25 to consider the disposition of the two charters. On January 24, 2006, the School Board hand-delivered notifications to the two charter schools stating that the superintendent would recommend termination of the charters at the January 25 special meeting.
 

 [4]
 

 . Cindy Adair, Chair of the Palm Beach County School District Audit Committee, spoke before the School Board at the January 25 special meeting. She explained that the school district audit committee had been working with Survivors for over a year to correct the deficiencies but to no avail; and that if allowed to continue, the deficiencies would severely impair public confidence in the School Board and its role as trustees of the public education tax dollars.
 

 [6]
 

 . Section 1002.33(8)(c), Florida Statutes (2005), provided in pertinent part:
 

 (c) At least 90 days prior to renewing or terminating a charter, the sponsor shall notify the governing body of the school of the proposed action in writing. The notice shall state in reasonable detail the grounds for the proposed action and stipulate that the school’s governing body may, within 14 calendar days after receiving the notice, request an informal hearing before the sponsor.
 

 [7]
 

 7. The district court did not address or attempt to harmonize the immediate order provisions of section 120.569(2)(n), Florida Statutes, with the immediate termination provisions of section 1002.33(8)(d). In its brief, the School Board acknowledges the existence of this immediate order provision in the APA, but argues that it does not apply to charter school terminations. We note that section 120.569(2)(n) does provide that an agency may enter an immediate final order, such as a cease and desist order, if it finds an immediate danger to the public health, safety, or welfare. However, this APA provision does not specify a "good cause” basis for immediate action, as is provided in section 1002.33(8). Further, the provision for appeal of the immediate order under chapter 120 and the appeal provisions set forth in section 1002.33(6) for immediate terminations are not similar.
 

 [8]
 

 . Provisions applicable to charter terminations are found in section 1002.33(8)(a)-(d), Florida Statutes (2005). The provisions applicable to appeals of charter terminations are found in section 1002.33(6)(c)-(e), Florida Statutes (2005).
 

 [9]
 

 . In 2006, the Legislature enacted section 1002.335, Florida Statutes (2006), which established an independent state-level entity called the “Florida Schools of Excellence Commission” and provided it with the power to authorize charter schools throughout the state.
 
 See
 
 ch. 2006-302, § 1, Laws of Fla. Under that statute, a school board is required to obtain approval of the State Board of Education in order to retain exclusive authority to authorize charter schools in its district. The First District Court of Appeal held section 1002.335 unconstitutional in
 
 Duval County School Board v. State Board of Education,
 
 998 So.2d 641 (Fla. 1st DCA 2008), on the grounds that it conflicted with article IX, section 4 of the Florida Constitution, which provides in pertinent part that "[t]he school board shall operate, control and supervise all free public schools within the school district.”
 
 See
 
 art. IX, § 4(b), Fla. Const. We expressly do not address the merits of that issue in this opinion.
 

 [10]
 

 . Section 1002.33(8)(d) was amended in 2006 to provide in pertinent part as follows:
 

 id) A charter may be terminated immediately if the sponsor determines that good
 
 *1230
 
 cause has been shown or if the health, safety, or welfare of the students is threatened. The sponsor shall notify in writing the charter school's governing body, the charter school principal, and the department if a charter is immediately terminated. The sponsor shall clearly identify the specific issues that resulted in the immediate termination and provide evidence of prior notification of issues resulting in the immediate termination when appropriate. The school district in which the charter school is located shall assume operation of the school under these circumstances. The charter school's governing board may, within 30 4-4 days after receiving the sponsor's decision to terminate the charter, appeal the decision pursuant to the procedure established in subsection (6).
 

 Ch. 2006-190, § 1, at 1935, Laws of Fla. (amendment emphasized). The amendment dealt with the additional requirements of what should be contained in the notice,-but no other requirements regarding pretermination procedures were affected.
 

 [11]
 

 . We realize that in a different context, the First District rejected the proposition of an “implied exemption" in the case of
 
 Gopman v. Department of Education,
 
 908 So.2d 1118 (Fla. 1st DCA 2005).
 
 Gopman
 
 involved the denial of a chapter 120 administrative hearing to an unsuccessful scholarship applicant under section 1009.42(1), Florida Statutes (2003), after the Department of Education (DOE) found him ineligible to receive the scholarship. The First District rejected the DOE's argument that an appeal procedure set forth in section 1009.42(1), Florida Statutes (2003), created an implied exemption from the APA. However, the statutory procedure at issue in
 
 Gopman
 
 is distinguishable from that set forth in section 1002.33. In
 
 Gopman,
 
 section 1009.42 created only “preliminai-y procedures" that "[Ijike ‘free form’ procedures ... do not have express statutory sanction.”
 
 Gopman,
 
 908 So.2d at 1121. In section 1009.42(1), the statute leaves it to the State Board of Education to adopt a rule of procedure establishing “a committee to consider appeals that are not resolved by
 
 other administrative action.”
 
 (Emphasis added.) In contrast, in section 1002.33, the Legislature expressly set forth the detailed procedure for deciding questions of immediate termination and for appealing those decisions. Additionally, section 1002.33(6)(c) provides that in charter school terminations, the decision of the State Board of Education, while final agency action, is not subject to the provisions of the APA.
 

 [12]
 

 . Legislation proposed for the 2009 legislative session, if enacted, would amend section 1002.33(8)(d) to do just that by stating that “[t]he sponsor's determination is not subject to an informal hearing under paragraph (b)
 
 *1233
 
 or pursuant to chapter 120.” Fla. S. Comm. on Educ., CS for SB 278 (2009).
 

 [13]
 

 . Section 1002.33(8)(a) provides that for nonrenewal or termination of charters, cause includes failure to participate in the State’s education accountability system, failure to meet student performance requirements, failure to meet generally accepted standards of fiscal management, violation of law or other good cause shown. The Charter School Appeal Commission Guidelines adopted by the Commission on August 8, 2003 and by the State Board of Education on August 19, 2003 state that the component parts of "good cause” for
 
 immediate
 
 termination are "one or more of the other legally sufficient causes” listed for regular termination in section 1002.33(8)(a). However, the guidelines state that to immediately terminate, the "good cause" must be a "higher standard” than that set forth for a regular termination and that the CSAC must take into account the totality of the circumstances including the immediacy of the district’s concerns, the extent of the concerns, the "amount of constructive notice” the school received about the concerns, and the likelihood that the school could or would have remedied the concerns with proper notice.
 
 See Charter School Appeal Commission Guidelines
 
 17,
 
 available at
 
 http://www.Adoe. org/board/meetings/Aug_ 19_03/CharterSchool AppealGuidelines.pdf.
 

 [14]
 

 . Survivors states that because section 1002.33(8)(e) provides specific procedural guidance for ninety-day terminations, but did not delineate similar procedures for immediate terminations under section 1002.33(8)(d), the Legislature therefore intended that immediate terminations under section 1002.33(8)(d) fall within the realm of the APA. This contention ignores the fact that section 1002.33(8)(c) does not expressly require APA-type notice and hearing for nonemergency terminations and, further, that emergency terminations are an integral part of the overall detailed legislative scheme in place for charter school creation, operation, termination, and appeal in which the entity issuing the final order is expressly exempt from the APA.
 

 [15]
 

 . The pertinent claims not reached by the district court are summarized as follows: the School Board should not have relied on the audit report because it is hearsay; the failure to properly notice the January 25 meeting or to find a need for immediate action at that meeting violated due process; the School Board never initiated a proper action for termination because the Superintendent failed to file a petition for termination giving Survivors an opportunity to know the charges and ap-proprialely respond; the termination cannot be upheld because there was no evidence submitted and no good cause shown; the audit report was not competent, substantial evidence or a legally sufficient reason for termination; the charters and statute required the School Board to commence alternative dispute resolution before terminating the charters; and the School Board failed to consider Survivors WPB and Survivors BB separately.