629 So.2d 911 (1993)
Stacy PRICE, As Personal Representative of the Estate of Barry Price, deceased, for and on behalf of claimants/survivors, The Estate of Barry Price, Stacy Price, Paul Price, Elaine Gadrich, Robyn Price and Lori Drennan, Appellants,
v.
Bernardo BEKER, M.D., Palm Beach Anesthesiology Associations, and JFK Medical Center, Inc., a Florida corporation, Appellees.
No. 92-2649.
District Court of Appeal of Florida, Fourth District.
December 1, 1993.
Rehearing Moot January 27, 1994.
Arnold R. Ginsberg of Perse, P.A., & Ginsberg, P.A., Miami, and Brian W. Smith, P.A., West Palm Beach, for appellants.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellee-JFK Medical Center, Inc.
ANSTEAD, Judge.
The trial court held the entry of an order of dismissal with prejudice of an injured party's claim against a physician-employee, pursuant to a settlement between those parties, bars the continuation of an action against the physician's employer, in this case the appellee, JFK Medical Center, Inc. We reverse.
The trial court's ruling is supported by the holding in Jones v. Gulf Coast Newspapers, Inc., 595 So.2d 90 (Fla. 2d DCA), rev. denied, 602 So.2d 942 (Fla. 1992). We respectfully disagree with the holding in Jones, primarily because it fails to distinguish between an order of dismissal entered by consent of the parties to partially effect a settlement agreement, and a true adjudication on the merits where the active tortfeasor is found not liable.
Here, as in Jones, the claimant settled with the active tortfeasor, and the settlement agreement and release specifically recited that the settlement would not affect the pending claim against the passive tortfeasor:
It is the intent of this release that the lawsuit styled STACY PRICE, et al. v. BERNARDO BEKER, M.D., et al... . remain pending as to JFK Medical Center, Inc., only.

(Emphasis in original). The parties stipulated to the entry of a dismissal with prejudice of the claim against the active tortfeasor and such an order was entered. It is undisputed that such order (along with the release and other settlement documents) forecloses any later claims by the claimant against the active tortfeasor. However, since it is also undisputed that there was no actual decision *912 on the merits of the claim, the question is whether the dismissal should also bar the claim against the active tortfeasor's employer.
The Jones decision is essentially based upon the following reasoning:
1. The vicarious tortfeasor's liability depends on the liability of the active tortfeasor.
2. The entry of dismissal with prejudice of the action against the active tortfeasor was a negative "adjudication on the merits" as to the liability of the active tortfeasor.
3. Since the active tortfeasor has been found not liable as a matter of law, the claimant could not establish an essential element of the claim against the passive tortfeasor.
In a respondeat superior situation, it is the fault of the active tortfeasor that gives rise to the liability of the active tortfeasor's principal, the passive tortfeasor. When there has been an adjudication on the merits in favor of an active tortfeasor, it is clear that the passive tortfeasor may use the adjudication as a defense to his own liability. The three (3) prongs of the Jones ruling fit perfectly in such a situation. For instance, if the active and passive tortfeasors were sued in the same action, a finding by a jury of no fault by the active tortfeasor would legally mandate a finding of no liability on the part of the passive tortfeasor. But such a finding is not present here and was not present in Jones.
Generally, the law, both statutory and court-made, has been progressive in setting aside arbitrary rules that are out of step with current views of justice. For instance, the legislature long ago passed statutes abrogating the rule that the release of one joint tortfeasor operates to release all other tortfeasors. Section 768.041(1), Florida Statutes (1991), provides:
A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.
In addition, section 768.31(5) provides:
RELEASE OR COVENANT NOT TO SUE.  When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release ... and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
By virtue of these statutes the parties are free to settle claims on their own terms without jeopardizing claims remaining against others, including passive tortfeasors, although those others are entitled to a credit for any amounts paid to the claimant in settlement for the injury. See Hertz Corp. v. Hellens, 140 So.2d 73 (Fla. 2d DCA 1962). We question why it should be any different where the parties to the settlement also agree that a dismissal with prejudice be entered on the claim between the settling parties.[1]
While there appears to be little case law on the subject, except for Jones and a subsequent second district case based thereon, there are some cases that offer some guidance. The authority relied on by Jones is Walsingham v. Browning, 525 So.2d 996 (Fla. 1st DCA 1988). While that case does hold that a dismissal with prejudice is a decision on the merits, its holding may be flawed because it relies on Lomelo v. American Oil Co., 256 So.2d 9 (Fla. 4th DCA 1971), and rule 1.420(a)(1), Florida Rules of Civil Procedure, which do not directly support the holding. Lomelo applied the doctrine of res judicata to hold that a dismissal of an earlier claim with prejudice barred a subsequent claim by the same claimant against the same *913 party defendant, a situation not present here. Further, rule 1.420(a)(1) does not provide that a dismissal with prejudice is a decision on the merits.
On the other hand, in Apstein v. Tower Investments of Miami, Inc., 544 So.2d 1120 (Fla. 3d DCA 1989), the court held the intent of the settling parties should control the effect of a consent dismissal with prejudice. In Hertz Corp. v. Hellens, 140 So.2d 73 (Fla. 2d DCA 1962), the second district held a passive tortfeasor (the owner of a vehicle) was not affected or released by a settlement and release of the active tortfeasor (the driver of the vehicle), although Hertz argued that as a vicarious tortfeasor it was not one of the other tortfeasors referred to in section 768.041(1). The court rejected that argument and held passive tortfeasors were, indeed, covered by the statute.[2]
The Restatement (Second) of Judgments, section 51, treats consent judgments pretty much the same way that sections 768.041(1) and 768.31(5) treat settlements. Section 51(4) provides:
A judgment by consent for or against the injured person does not extinguish his claim against the person not sued in the first action... ."
The comments to subsection (4) provide:
f. Judgment by consent (Subsection (4)). The settlement of a claim against one of several obligors generally does not result in the discharge of others liable for the obligation. This rule applies when the obligation is reduced to judgment, see s 50, and even though the liability of one obligor is derivative from another under principles of vicarious responsibility. Moreover, a judgment by consent, though it terminates the claim to which it refers, is not an actual adjudication. See s 27, Comment e. The considerations that lead to denying issue preclusive effect to consent judgments, chiefly the encouragement of settlements, are applicable when an injured person has claims against more than one person for the same wrongful act. It is therefore appropriate to regard the claim against the primary obligor and the person vicariously responsible for his conduct as separate claims when one of them has been settled. Any payment received by the injured person in such a settlement, however, discharges pro tanto the obligation of the other obligor to pay the loss. See s 50(2).
(Emphasis supplied). We elect to treat the consent judgment here the same way for the policy reasons set out in the comments.
By adopting the policy underlying the Restatement of Judgments as set out above, we believe we are following the lead of the legislature in enacting sections 768.041(1) and 768.31(5). Otherwise, we would continue to honor a fiction. The fiction is that there has been a decision on the merits when there has not. In fact, if the active tortfeasor paid compensation to the claimant to secure the dismissal, the fiction is even less justified, since the claimant in such a case has actually prevailed in securing some compensation from the active tortfeasor. In this case it is undisputed that the parties to the settlement agreement resulting in the consent order of dismissal did not intend to preclude the claimant from proceeding against the passive tortfeasor. They said so in writing. We are doing little more than upholding that agreement.
*914 Accordingly, we reverse and remand for further proceedings in accord herewith.
GLICKSTEIN, J., and BIRKEN, ARTHUR M., Associate Judge, concur.
NOTES
[1] In Eason v. Lau, 369 So.2d 600 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1365 (Fla. 1979), the court treated a dismissal with prejudice against a joint tortfeasor as if it were a release for purposes of applying sections 768.041(1) and 768.31(5).
[2] The court also held Hertz was still entitled to indemnity from the active tortfeasor, even though that tortfeasor had been released from liability by the injured party:

Of course, it is impossible for a court to forecast all of the types of actions which might be permitted between litigants when one of the parties obtains a release or covenant not to sue. We can say that a party defendant who is primarily liable could not plead his covenant or release signed by the plaintiff as a defense to an action for indemnification or exoneration brought against him by parties secondarily liable. Nor could the primary wrongdoer thereafter have a cause of action against the injured party for breach of their covenant not to sue or their contract of release resulting from the injured party bringing an action against parties secondarily liable. In other words, a suit by an injured party against a party secondarily liable does not constitute a breach of a covenant not to sue or contract of release entered into between said injured party and the primary wrongdoer. A primary wrongdoer enters such agreements at the peril of being later held to respond again in an indemnification action brought against him by the vicarious wrongdoer.
Id. at 75.