COPE, Judge.
Nicholas and Angela Baudo appeal an adverse summary final judgment entered on the basis of a release given to other tortfea-sors. We conclude that the trial court ruling is contrary to sections 768.041 and 768.31, Florida Statutes (1991), and reverse.
In January 1991, Nicholas Baudo slipped and fell in the 163rd Street Mall, fracturing his hip. Baudo’s hip was replaced by defendant-appellee Aventura Hospital and Medical Center (“Hospital”).[1] Afterward he was transferred for convalescence to defendant-appellee Bon Seeours Hospital/Villa Maria Nursing Center (“Nursing Home”). Plaintiff Baudo alleges that during his stay at the Hospital and/or Nursing Home, he developed a serious bedsore on the heel of his foot which required additional treatment.
Plaintiffs Nicholas and Angela Baudo brought suit against the shopping center, First Property Management Corporation, and its management company, Southeast Service Corporation, for the slip and fall injury. (“Lawsuit I”). The suit claimed damages for all injuries Nicholas Baudo suffered, including the bedsore. Angela Baudo made a claim for loss of consortium.
In March 1993, plaintiffs obtained a settlement of $50,000 from First Property Management Corporation and executed a release in its favor. The release stated, “This release specifically does NOT include Southeast Service Corporation, or any other person, firm, corporation or entity not specifically released in this document, and the Plaintiffs shall proceed with their litigation against Southeast Service Corporation.”
In April 1993, plaintiffs settled with Southeast Service Corporation for $15,000, and delivered a release to Southeast. This disposed of the remainder of Lawsuit I.
In August 1993, plaintiffs brought suit against the Hospital and the Nursing Home for medical negligence (“Lawsuit II”). Both *213 defendants denied negligence and asserted the affirmative defenses of release and payment. Defendants argued that they had been released by virtue of the releases plaintiffs gave First Property Management Corporation and Southeast Service Corporation in Lawsuit I. Defendants also claimed that plaintiffs had been paid for the bedsore claim by virtue of the settlements they had received in Lawsuit I. Defendants reasoned that since the bedsore claim had been asserted in Lawsuit I, it followed that by accepting settlements, plaintiffs had been paid in full for that claim.
The Hospital and Nursing Home moved for summary judgment on their defenses of release and payment. The trial court entered summary judgment in defendants’ favor, and plaintiffs have appealed.
The summary judgment was improvidently entered and is reversed. Section 768.041, Florida Statutes (1991), provides in part:
768.041 Release or covenant not to sue.—
(1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfea-sor who may be liable for the same tort or death.
(2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
See also § 46.015, Fla. Stat. (1991) (expanding concept to non-tort eases).
Similarly, section 768.31, Florida Statutes (1991), provides in part:
(5) RELEASE OR COVENANT NOT TO SUE.—-When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.
These statutes were adopted in furtherance of Florida’s public policy to encourage “the settlement of civil actions.” JFK Medical Center, Inc. v. Price, 647 So.2d 833, 834 (Fla.1994) (citing Sun First National Bank v. Batchelor, 321 So.2d 73, 74 (Fla. 1975)). “By virtue of these statutes the parties are free to settle claims on their own terms without jeopardizing claims remaining against others-” Price v. Beker, 629 So.2d 911, 912 (Fla. 4th DCA 1993), decision approved sub nom. JFK Medical Center, Inc. v. Price, 647 So.2d at 835.
It follows, as a matter of law, that the releases executed by plaintiffs in Lawsuit I did not operate to release or discharge the liability of any of the defendants in Lawsuit II.
In arguing to the contrary, the defendant Nursing Home and Hospital rely on McCutcheon v. Hertz Corporation, 463 So.2d 1226 (Fla. 4th DCA), review denied, 476 So.2d 674 (Fla.1985). That ease is inapplicable. It involved an offer of judgment and nowhere mentions the statutes governing releases.
Defendants rely on Rucks v. Pushman, 541 So.2d 673 (Fla. 5th DCA), review denied, 549 So.2d 1014 (Fla.1989). The Rucks case is also inapposite because it does not mention, much less analyze, sections 768.31 and 768.041, Florida Statutes.[2]
*214 Defendants also assert the defense of payment, contending that plaintiffs have already been compensated for the bedsore in Lawsuit I. Again, the statutes are dispositive. Defendants in Lawsuit II “are entitled to a credit for any amounts paid to the claimant in settlement for the injury.” Price v. Beker, 629 So.2d at 912 (citation omitted); see §§ 768.041(2), 768.31(5), Fla. Stat. (1991). While defendants are entitled to credit, they are not entitled to a summary judgment which dismisses the action.
The summary final judgment is reversed and the cause remanded for further proceedings consistent herewith.

. The question discussed in Rucks is the effect of a settlement agreement and release. 541 So.2d at 676r Had the applicable statutes been called to the court's attention, we are confident that the statutes would have been applied, as written, to the release at issue, thus leaving the Rucks court to analyze the effect of the settlement agreement standing alone.

. Defendant-appellee Galen Health Care, Inc. does business as Aventura Hospital and Medical Center. The predecessor entity was Humana,
Inc., doing business as Humana Hospital-Biscayne.
*214 The Rucks court went on to discuss issues of assignment and subrogation, none of which are involved in the present appeal.
For present purposes it is sufficient to distinguish Rucks because it did not deal with the release statutes which control the case now before us. We note, however, that the United States Court of Appeals for the Eleventh Circuit has held that Rucies is inconsistent with a controlling decision of the Florida Supreme Court. Williams v. Arai Hirotake, Ltd., 931 F.2d 755, 759 n. 4 (11th Cir.1991), cited in Chester v. Keys Hospital Foundation, Inc., 677 So.2d 421 (Fla. 3d DCA 1996).