891 So.2d 1205 (2005)
Grace BROZ, Appellant,
v.
Eugenio RODRIGUEZ, M.D., Eugenio Rodriguez, M.D., P.A., Jeffrey C. Fernyhough, M.D., and Florida Back Institute, Inc., Appellees.
No. 4D03-4885.
District Court of Appeal of Florida, Fourth District.
February 2, 2005.
Jane Kreusler-Walsh, Chales T. Cone, Barbara J. Compiani of Jane Kreusler-Walsh, P.A., West Palm Beach, and Sarah Steinbaum of Sarah Steinbaum, P.A., Miami, for appellant.
Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for appellees Eugenio *1206 Rodriguez, M.D., and Eugenio Rodriguez, M.D., P.A.
Mark Hicks and Brett C. Powell of Hicks & Kneale P.A., Miami, for appellees Jeffrey C. Fernyhough, M.D., and Florida Back Institute, Inc.
SILVERMAN, SCOTT J., Associate Judge.
The plaintiff, Grace Broz, appeals the entry of a final summary judgment in favor of the defendants, Eugenio Rodriguez, M.D., Eugenio Rodriguez, M.D., P.A., Jeffrey C. Fernyhough, M.D., and the Florida Back Institute, Inc. The final summary judgment bars Plaintiff from asserting her claims against Defendants, as subsequent tortfeasors. We have jurisdiction.
On February 18, 1999, Plaintiff allegedly fell at the Rocking Horse Ranch and sustained injuries. As a result, she sought medical attention from Defendants. On September 17, 1999, Defendants performed surgery on the alleged injuries. Plaintiff contends that during the surgery Defendants negligently transected her ureter, causing a urinoma and persistent pain. She further states that the transection required additional surgery, therapy, and a risk of unknown medical implications.
In June 2000, Plaintiff filed suit against the Rocking Horse Ranch. Plaintiff was fully aware at that time that she had a potential claim against Defendants. Plaintiff actually asserted a claim that the initial tortfeasor was responsible for the alleged medically negligent care she later received. The parties tried the case before a jury. However, before the jury could reach a verdict, the parties amicably settled the case for $125,000.
As part of the settlement, Plaintiff executed a general release on October 29, 2001. The language of the release was very broad. However, it is unquestioned that the terms and conditions of the release did not exclude or reserve any claims Plaintiff might have against Defendants.
On July 3, 2002, Plaintiff filed suit against Defendants alleging medical malpractice and vicarious liability. Defendants moved for the entry of a final summary judgment contending that Plaintiff's October 29, 2001 general release barred her claims against Defendants. The trial court agreed and entered a final summary judgment in favor of Defendants. This appeal ensues.
The issue before this court is whether the trial court erred by granting final summary judgment in favor of Defendants and finding that Plaintiff's general release of the Rocking Horse Ranch additionally released Defendants, as subsequent tortfeasors. We find that the trial acted properly.
Section 768.041(1) Florida Statutes (1999), provides:
A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.

(Emphasis added.)
Plaintiff contends that section 768.041(1) applies to her claims against Defendants. She reasons that even though she signed a general release in favor of the Rocking Horse Ranch, the statute prevents the barring of her claims, since Defendants are liable for the same tort. Defendants counter that section 768.041(1) applies to joint tortfeasors and not sequential or subsequent tortfeasors. Accordingly, Defendants assert that Plaintiff's general release in favor of the Rocking Horse Ranch bars her claim against them.
Whether Plaintiff's general release to the Rocking Horse Ranch bars *1207 her claims against Defendants is dependent upon this court's application of section 768.041(1). The preeminent canon of statutory interpretation requires us to "presume that [the] legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l. Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Rollins v. Pizzarelli, 761 So.2d 294, 297 (Fla.2000).
We note that the legislature elected to use the phrase, "same tort." It did not use the phrases "same injury" or "same damages." Based upon the plain meaning of the words used by the Legislature in section 768.041(1), in order for Plaintiff to prevail in this appeal, she must demonstrate that the tort, which she claimed and settled with the Rocking Horse Ranch (negligence), is the "same tort" which she now alleges against Defendants (medical malpractice and vicarious liability). Plaintiff is incapable of making that showing since neither tort is identical.
Plaintiff relies on an earlier interpretation of the statute in Hertz Corp. v. Hellens, 140 So.2d 73, 73 (Fla. 2d DCA 1962), where the second district held that the statute "applies to all tortfeasors, whether joint or several, including vicarious tortfeasors." The Hellens decision is not inconsistent with our ruling, and is distinguishable from the present case. Hellens addressed the applicability of the statute to vicarious tortfeasors, dealing only with whether the statute applied to a company who would be potentially liable for the same tort. The decision in Hellens discussed only joint and several tortfeasors, and not subsequent and sequential tortfeasors, as Defendants are alleged to be in the present case.
Plaintiff also relies on section 768.31, Florida Statutes (1999), which provides:
When two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right of contribution among them.
(Emphasis added.) Plaintiff's reliance upon this statute is misplaced. Her argument ignores that the plain language of the statute, which by its terms, is limited to joint tortfeasors. The language of the statute does not extend to subsequent and sequential tortfeasors.
Plaintiff also contends that sections 768.041 and 768.31 apply to subsequent and sequential tortfeasors as well as joint and several tortfeasors. In support of this proposition, she cites to Baudo v. Bon Secours Hospital/Villa Maria Nursing Center, 684 So.2d 211 (Fla. 3d DCA 1996). In Baudo, the victim executed separate releases in favor of a shopping mall and its management company in settlement of the victim's claims, which included a claim for a serious bedsore that the victim developed in the hospital and/or nursing home while recovering. The third district reversed a trial court decision barring subsequent claims against the hospital and nursing home, relying on 768.041(1) to find that "as a matter of law,... the releases executed by the plaintiff ... in [the first lawsuit] did not operate to release or discharge the liability of any of the defendants in [the second lawsuit]." Id. at 213.
Baudo is likewise distinguishable from the present case. The initial release executed by the plaintiff in Baudo expressly stated that it did not include the management company or any other person not specifically named, and explicitly stated that the plaintiff would file a subsequent suit against the management company. *1208 Consistent with our ruling, the plaintiff in Baudo would be able to pursue other claims against subsequent tortfeasors. The rule of complete liability and the subrogation action that vests in the initial tortfeasor does not operate as an absolute bar to claims against subsequent tortfeasors; it merely requires "that plaintiffs settling with an initial tortfeasor be specific with respect to the damages that the settlement and release encompass." Caccavella v. Silverman, 814 So.2d 1145, 1147 (Fla. 4th DCA 2002). In an action against the initial tortfeasor, if the plaintiff does not specifically reserve a cause of action against subsequent tortfeasors, the legal presumption is that the plaintiff recovered from the initial tortfeasor for the plaintiff's injuries. Rucks v. Pushman, 541 So.2d 673, 676 (Fla. 5th DCA 1989). It naturally follows that Plaintiff, not having reserved her cause of action against Defendants in the general release, is presumed to have recovered any damages she might otherwise have been entitled to against Defendants in her settlement with the Rocking Horse Ranch thereby barring Plaintiff from asserting a cause of action against the Defendants.
We note that the rule set forth in Rucks corresponds with several decisions of this court in regards to sequential tortfeasors. In McCutcheon v. Hertz Corp., 463 So.2d 1226 (Fla. 4th DCA 1985), a victim who was involved in a collision involving the initial tortfeasor accepted judgment without qualification as full settlement of all claims including damage allegedly caused by the subsequent tortfeasor. This court held that the trial court properly dismissed the separate complaint brought against the subsequent tortfeasor, and that the first acceptance of judgment was settlement for all claims. In Mosley v. American Medical International, Inc., 712 So.2d 1149 (Fla. 4th DCA 1998), this court held that a patient, who was injured in an attack by unknown assailants at his place of business, was barred from suing health care providers for medical negligence in the treatment of his injuries after having sued the building owner and insurer and settling against them. Even though the patient in this case did not know the cause of his injuries, he was aware of all of his injuries at the time of settlement.
This court recently upheld the line of decisions regarding sequential tortfeasors in Caccavella, supra. In Caccavella, this court affirmed the trial court's finding that the Caccavellas' failure to expressly reserve any rights against the subsequent tortfeasor physician when they settled with the initial physician constituted a bar to further pursuit of their claim. In addition, Caccavella expressly discusses Rucks, Mosley, and McCutcheon, finding each of them to be authoritative on this issue.
We therefore AFFIRM the decision of the trial court.
WARNER and GROSS, JJ., concur.