# Supreme Court of Florida

———————

No. SC2021-1255

———————

**SAMANTHA ELAINE TSUJI, et al.,**
Petitioners,

vs.

**H. BART FLEET, etc., et al.,**
Respondents.

June 29, 2023

COURIEL, J.

In the end—often a good place to start—this is a negligence case against a man that was filed more than three years after he died. Section 733.710(1), Florida Statutes (2013), tells us that is too late by over a year. The First District Court of Appeal affirmed the judgment of a trial court saying as much. *Tsuji v. Fleet*, 326 So. 3d 143, 145 (Fla. 1st DCA 2021). It did so notwithstanding a contrary decision of the Fourth District Court of Appeal that had found in another law, section 733.702(4)(b), Florida Statutes (1995), a reason to disregard section 733.710(1)'s prohibition where, as

here, a plaintiff in a negligence action sought money damages from the decedent's insurer rather than from the decedent himself (or from his estate, his personal representative, or his beneficiaries). *Pezzi v. Brown*, 697 So. 2d 883, 886 (Fla. 4th DCA 1997).[1]

The First District is correct. Section 733.710(1) extinguishes the claim at issue in this case. That statute is, as we have said before, a "jurisdictional statute of nonclaim" or "statute of repose." That means it "bar[s] actions by setting a time limit within which an action must be filed as measured from a specified act, after which time the cause of action is extinguished." *Merkle v. Robinson*, 737 So. 2d 540, 542 n.6 (Fla. 1999); *see also Jones v. Golden*, 176 So. 3d 242, 248 (Fla. 2015). It follows from this conclusion, the First District also correctly decided, that the decedent's employer was exonerated from vicarious liability claims based on the decedent's negligence. We therefore approve the First District's decision below and disapprove the Fourth District's decision in *Pezzi*.

---

1. We have jurisdiction because the First District certified a direct conflict with the Fourth District's decision in *Pezzi*. *See* art. V, § 3(b)(4), Fla. Const.

- 2 -

# I

On June 11, 2014, Thomas E. Morton Jr. injured the petitioners, Samantha Tsuji and Crystal Williams, in a car accident. At the time of the accident, Morton was working for the Lewis Bear Company (LBC) and driving a company-owned car within the course of his employment. More than three years later, on February 6, 2018, the petitioners sought redress. They sued Morton for negligently operating the car and LBC for vicarious liability under the doctrines of respondeat superior and dangerous instrumentality. But the petitioners soon learned that Morton had died of unrelated causes only weeks after the accident, on June 28, 2014. So the petitioners substituted the personal representative of Morton's estate, H. Bart Fleet, for Morton himself, and reduced their request for damages against the estate to the limits of Morton's casualty insurance coverage.[2]

---

2. While the petitioners' claims against LBC were not limited in the amended complaint, the petitioners now state that their claims against LBC are also capped by the limits of LBC's casualty insurance coverage.

LBC moved for summary judgment. It argued that section 733.710(1) barred the petitioners' claims against the estate because the statute required the petitioners to bring claims within two years of the decedent's death—something the petitioners failed to do. Additionally, LBC, citing *Buettner v. Cellular One, Inc.*, 700 So. 2d 48 (Fla. 1st DCA 1997), asserted that because section 733.710(1) exonerated the estate from liability, so too was LBC exonerated from vicarious liability for Morton's negligence.

In response, the petitioners cited *Pezzi*, 697 So. 2d at 886, and this Court's statements approving that decision in *May v. Illinois National Insurance Co.*, 771 So. 2d 1143 (Fla. 2000).[3] The

---

3. In *May*, we answered a fairly technical certified question from the United States Court of Appeals for the Eleventh Circuit: whether sections 733.702 and 733.710, alone or together, function as statutes of nonclaim (such that, absent an exception, claims not presented within the periods they designate would not be binding on an estate) or as statutes of limitation (such that a party seeking to invoke them would have to plead and prove its applicability as affirmative defenses to avoid waiver). 771 So. 2d at 1145. We said section 733.702 is a statute of limitations that cannot be waived in a probate proceeding by failure to object to a claim on timeliness grounds, and section 733.710 is a jurisdictional statute of nonclaim that is not subject to waiver or extension in a probate case. *Id.* We also remarked that "it is well settled that the total failure to file a timely claim against an estate does not prevent a creditor from recovering up to the policy limits of a decedent's casualty

petitioners argued that a plaintiff—under section 733.702(4)(b)—can bring claims against a decedent's estate over two years after the decedent's death if the plaintiff seeks recovery from only the decedent's casualty insurance.

The trial court agreed with LBC and ruled that section 733.710(1) barred the petitioners' action against the estate because the petitioners failed to file the claims within two years of Morton's death. And because the petitioners could not file suit to hold the estate liable, LBC also could not be held vicariously liable. The petitioners moved for rehearing, arguing that the trial court overlooked section 733.702(4)(b)'s casualty insurance exception and this Court's decision in *May*, 771 So. 2d at 1157 n.13, 1159. The trial court denied that motion. *Tsuji v. Fleet*, No. 2018-CA-000218, 2020 WL 3527555 (Fla. 1st Cir. Ct. Feb. 21, 2020).

---

insurance." *Id.* at 1159; *see also id.* at 1157 n.13 (stating the same). These assertions were "not essential to the decision" in *May*, that is, the question certified to us by the Eleventh Circuit. *State ex rel. Biscayne Kennel Club v. Bd. of Bus. Regul.*, 276 So. 2d 823, 826 (Fla. 1973). They are therefore "without force as precedent" though we do of course note them. *Id.*

On appeal, the First District affirmed, holding that section 733.710(1) bars the petitioners from bringing claims based on Morton's negligence against the estate beyond the two-year time limit, and because of this, the petitioners also could not hold LBC vicariously liable for Morton's negligence. *Tsuji*, 326 So. 3d at 147-49.[4] The petitioners then sought review from this Court.

## II

We first address whether section 733.710, Florida Statutes, bars the petitioners' claims against Fleet, the personal representative of Morton's estate.[5] It does. In reaching that conclusion, we consider the petitioners' arguments about how section 733.702 informs our reading of section 733.710.

---

4. The district court also concluded that section 627.4136(1), Florida Statutes—Florida's nonjoinder insurance statute—prevents the petitioners from joining a casualty insurer before obtaining a settlement or verdict against Morton's estate. *Tsuji*, 326 So. 3d at 147.

5. As this case requires us to construe statutes, our review of the First District's analysis is de novo. *Alachua Cnty. v. Watson*, 333 So. 3d 162, 169 (Fla. 2022).

**A**

When we construe statutes, "our first (and often only) step . . . is to ask what the Legislature actually said in the statute, based upon the common meaning of the words used" when the statute was enacted. *Shepard v. State*, 259 So. 3d 701, 705 (Fla. 2018) (quoting *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 313 (Fla. 2017) (Lawson, J., concurring in part and dissenting in part)). To derive this common meaning, we must "be mindful of the 'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.' " *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). And in cases that task us with interpreting multiple provisions, where possible, we "must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992).

**B**

Part VII of chapter 733 of the Florida Probate Code has two sets of limits that, together, bring order to creditors' claims against estates: one resides in section 733.702 and the other in section 733.710.

Section 733.702 "fixes the basic time frame for filing of claims in decedent's estates being probated in Florida." *May*, 771 So. 2d at 1155 (quoting *Comerica Bank & Tr., F.S.B. v. SDI Operating Partners, L.P.*, 673 So. 2d 163, 165 (Fla. 4th DCA 1996)). It says, at subsection (1):

> If not barred by s. 733.710, no claim or demand against the decedent's estate that arose before the death of the decedent . . . and no claim for damages, including, but not limited to, an action founded on fraud or another wrongful act or omission of the decedent, is binding on the estate, on the personal representative, or on any beneficiary unless filed in the probate proceeding on or before the later of the date that is 3 months after the time of the first publication of the notice to creditors or, as to any creditor required to be served with a copy of the notice to creditors, 30 days after the date of service on the creditor . . . .

§ 733.702(1), Fla. Stat. We have described this as a statute of limitations, *May*, 771 So. 2d at 1150, and it bars untimely claims even if "no objection to the claim is filed." § 733.702(3), Fla. Stat.

The statute of limitations can be extended only in three circumstances: "fraud, estoppel, or insufficient notice of the claims period." *Id.*

In subsection (2), the statute provides:

> No cause of action, including, but not limited to, an action founded upon fraud or other wrongful act or omission, shall survive the death of the person against whom the claim may be made, whether or not an action is pending at the death of the person, unless a claim is filed within the time periods set forth in this part.

§ 733.702(2), Fla. Stat. This provision sweeps more broadly than subsections (1) and (3), as it incorporates not only the periods outlined in section 733.702, but also those elsewhere in part VII of chapter 733 of the Florida Statutes, such as section 733.710(1).

Subsection (4) then enumerates three exceptions to the limitations found in subsections (1), (2), and (3). Of relevance to this case, the Legislature provided that: "[n]othing in [section 733.702] affects or prevents[,] . . . [t]o the limits of casualty insurance protection only, any proceeding to establish liability that is protected by the casualty insurance." § 733.702(4)(b), Fla. Stat.[6]

_____

6. The other two exceptions are: section 733.702(4)(a), Florida Statutes ("A proceeding to enforce any mortgage, security interest,

- 9 -

Importantly, however, subsection (5) makes clear that: "Nothing in [section 733.702] shall extend the limitations period set forth in s. 733.710." § 733.702(5), Fla. Stat.

So we come to subsection (1) of section 733.710, which provides:

> Notwithstanding any other provision of the code, 2 years after the death of a person, neither the decedent's estate, the personal representative, if any, nor the beneficiaries shall be liable for any claim or cause of action against the decedent, whether or not letters of administration have been issued, except as provided in this section.

§ 733.710(1), Fla. Stat.

There are only two exceptions to this statute of repose or nonclaim. Subsection (2) provides that section 733.710(1) "shall not apply to a creditor who has filed a claim pursuant to s. 733.702 within 2 years after the person's death, and whose claim has not been paid or otherwise disposed of pursuant to s. 733.705." § 733.710(2), Fla. Stat. And subsection (3) provides that section

---

or other lien on property of the decedent."), and section 733.702(4)(c), Florida Statutes ("The filing of a cross-claim or counterclaim against the estate in an action instituted by the estate; however, no recovery on a cross-claim or counterclaim shall exceed the estate's recovery in that action.").

733.710(1) "shall not affect the lien of any duly recorded mortgage or security interest or the lien of any person in possession of personal property or the right to foreclose and enforce the mortgage or lien." § 733.710(3), Fla. Stat. Neither of these exceptions addresses casualty insurance.

When no exception applies, an untimely claim is "automatically barred." *Barnett Bank of Palm Beach Cnty. v. Estate of Read*, 493 So. 2d 447, 448 (Fla. 1986). Section 733.710(1) is in that sense "a self-executing, absolute immunity to claims filed for the first time . . . more than 2 years after the death of the person whose estate is undergoing probate." *May*, 771 So. 2d at 1156 (quoting *Comerica*, 673 So. 2d at 167).

## C

The petitioners filed their claims more than two years after Morton's death. If the petitioners' claims seek to hold Fleet "liable" for claims against Morton, then they are barred under section 733.710(1). So we have to decide: is Fleet "liable" under section 733.710(1) given that the petitioners seek only payment from a casualty insurance provider? We decide he is, and that therefore petitioners' claims are untimely.

- 11 -

The petitioners assert that "liable" in this context means only "[t]he state or condition of a person who is responsible for payment or who is under obligation to pay." Initial Brief of Petitioners at 44 (alteration in original) (quoting *Liability*, *Ballentine's Law Dictionary* 751 (2d ed. 1948)) (emphasis removed). They call this the "pay-money" sense of the word, as opposed to "[t]he state or condition of a person after he has breached his contract or violated any obligation resting upon him," *id.* at 45 (quoting *Liability*, *Ballentine's Law Dictionary* 751) (emphasis removed), which they describe as the "breach-of-duty" sense of the word. And here, the petitioners say, they seek only damages up to the limits of any casualty insurance coverage under section 733.702(4)(b), meaning they do not seek to hold Fleet "liable" for claims against Morton in the "pay-money" sense of the word. He may have been responsible for the decedent's breach of a duty, but he does not have to pay; an insurer does. This, they say, means their claims are not barred even though they were filed more than two years after Morton's death.

In support of their reading, the petitioners rely on the context of section 733.710(1), the canon against surplusage, and the

- 12 -

Legislature's inaction following the Fourth District's decision in *Pezzi* and our approval of that decision in dicta in *May*. None of those arguments pan out.

**1**

The petitioners argue that their proposed reading of "liable" makes sense in the context of section 733.710(1). After all, section 733.710(1) concerns claims against the decedent, not the estate, personal representative, or any beneficiary. A plaintiff must prove that the decedent—the decedent during his life, that is—breached a duty owed to the plaintiff. The most an estate, personal representative, or any other beneficiary could do would be to pay for the decedent's injurious conduct; none of them could be liable for that conduct in the sense of being in "the state or condition of a person after he has breached his contract or violated any obligation resting upon him." *Liability, Ballentine's Law Dictionary* 751 (2d ed. 1948).

We do not read the context as the petitioners do. The word "liable" appears in section 733.710(1), which, as a statute of repose or nonclaim, "automatically bars untimely claims." *May*, 771 So. 2d at 1157. Absent instruction from the Legislature, we will not

interpret a statute of repose or nonclaim, which "puts an outer limit on the right to bring a civil action," *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 696 (Fla. 2015) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014)), to do what the petitioners ask of this one: to give repose from some proceedings but not others.[7]

Nor did the Legislature give us, as it might have, an express indication that "liable" means what the petitioners say it does, here. Absent a legislatively supplied definition, we give the word "liable" its "plain and ordinary meaning" at the time of the statute's enactment, and we often look to contemporaneous dictionaries for evidence of that meaning. *See Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Schs., Inc.*, 3 So. 3d 1220, 1233 (Fla. 2009). *Webster's Third New International Dictionary* defines "liable," in part, as "bound or obligated according to law or equity." *Liable*, *Webster's Third New International Dictionary* 1302 (1986). The sixth edition of *Black's*, published only a year after section 733.710(1) was first enacted, defines "liable" as: "[b]ound or obliged in law or equity; responsible; chargeable; answerable; compellable to make

_____

7. The Legislature has provided such instruction in both section 733.710(2) and section 733.710(3), but neither applies here.

- 14 -

satisfaction, compensation, or restitution." *Liable, Black's Law Dictionary* 915 (6th ed. 1990).[8] And *The American Heritage Dictionary* defines the term, in part, as "[l]egally obligated; responsible." *Liable, The American Heritage Dictionary* 1036 (3d ed. 1992). The neighboring language in section 733.710 refers to liability "for any claim or cause of action against the decedent," and not, for example, a money judgment, charge, or amount due—all of which would square more naturally with what the petitioners call the "pay-money" understanding of the word.

All this makes clear that Fleet can be held "liable" under the meaning of the term in section 733.710(1) without a finding that he breached a duty owed to the petitioners. Because the petitioners seek to hold Fleet—a personal representative who "stands in [the] shoes" of Morton, *Sullivan v. Sessions*, 80 So. 2d 706, 707 (Fla.

---

8. *Black's* also defines "liable" as: "Obligated; accountable for or chargeable with. Condition of being bound to respond because a wrong has occurred. Condition out of which a legal liability might arise. . . . Justly or legally responsible or answerable. Exposed or subject to a given contingency, risk, or casualty, which is more or less probable. Exposed, as to damage, penalty, expense, burden, or anything unpleasant or dangerous." *Liable, Black's Law Dictionary* 915 (6th ed. 1990).

1955)—responsible, accountable, answerable, and chargeable for a claim that they have against Morton, they effectively seek to hold Fleet "liable" for a claim they have against Morton under section 733.710(1).

There is also the fact that the Legislature uses "liable" and "liability" throughout the code in a way that is hard to square with the petitioners' proposed understanding of the term. Take section 733.702(4)(b) itself: the Legislature excepted "any proceeding to establish liability that is protected by the casualty insurance" from the timeliness bars set out elsewhere in section 733.702. Any recovery under subsection (4)(b), however, is cabined to "the limits of the casualty insurance protection only," meaning a defendant in a proceeding under this subsection, like Fleet, would not be responsible for the payment of damages, and therefore would not be "liable" in the "pay-money" sense of the word. And yet, the Legislature still used the term "liability." We see no reason to read "liable" and "liability" to mean different things across part VII of chapter 733.

Other uses of "liability" and "liable" in the Florida Statutes also refute the petitioners' proposed reading of section 733.710(1). On

- 16 -

at least some occasions when the Legislature has used "liability" in what the petitioners term the "pay-money" sense, it has done so explicitly. For example, as the petitioners recognize, Initial Brief of Petitioners at 45, the Legislature defined "liability" to mean "the obligation to pay a judgment, settlement, penalty, fine . . . or reasonable expenses incurred with respect to a proceeding" in chapter 607, the Florida Business Corporation Act. § 607.0850(5), Fla. Stat. (2022). In section 112.312, the Legislature defined "liability" in Florida's code of ethics for public employees as "any monetary debt or obligation owed by the reporting person to another person, entity, or governmental entity," with some exceptions not relevant here. § 112.312(14), Fla. Stat. (2022). And for part of the Insurance Code, the Legislature defined "liability" in part as "legal liability for damages." § 627.942(4), Fla. Stat. (2022). There is no such definition in the statutes with which we are working here.

Something else is missing: where the Legislature has specified that it is using "liable" exclusively in the "pay-money" sense, it often identifies which parties are, or are not, liable "*for damages.*" *See, e.g.,* § 83.67(4), Fla. Stat. (2022) ("The landlord is not liable for

- 17 -

damages caused by a United States flag displayed by a tenant.");
§ 394.459(10), Fla. Stat. (2022) ("Any person who violates or abuses
any rights or privileges of patients provided by this part is liable for
damages as determined by law."); § 624.155(4), Fla. Stat. (2022)
("Upon adverse adjudication at trial or upon appeal, the authorized
insurer shall be liable for damages, together with court costs and
reasonable attorney's fees incurred by the plaintiff."). Here,
however, the Legislature did not use "liable" in this narrow way: it
did not provide in section 733.710(1) that the decedent's estate, the
personal representative, or the beneficiaries shall not be liable "for
damages" for any claim or cause of action against the decedent
brought more than two years after the decedent's death. This
absence suggests that we should not read "liable" in section
733.710(1) narrowly to refer only to the obligation to pay.

Given the context in which we find "liable," the commonly
understood meaning of the term, and the Legislature's usage of
"liable" and "liability" both in part VII of chapter 733 and elsewhere
in the code, we conclude that section 733.710(1) bars the
petitioners' claims against Fleet.

## 2

The petitioners also invoke the canon against surplusage, "an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible." *Hechtman v. Nations Title Ins. of New York*, 840 So. 2d 993, 996 (Fla. 2003). They say that the First District's reading of section 733.710(1) renders duplicative section 733.702(2), which extinguishes any cause of action not filed within the periods set forth in part VII of chapter 733, including section 733.710(1)'s two-year time bar. If, according to the petitioners, section 733.710(1) bars their claims, then the Legislature would have had no reason to extend the reach of section 733.702(2) to also extinguish a cause of action filed beyond section 733.710(1)'s two-year time bar.[9] The petitioners also argue that the First

---

9. The petitioners further argue that we should not read section 733.710(1) to protect unenumerated parties, as that would also result in overlap with section 733.702(2), which protects any defendant facing an untimely claim. But we do not read section 733.710(1) to bar a proceeding against either LBC or a casualty insurer, both unenumerated parties. Instead, as a consequence of our conclusion that section 733.710(1) bars the petitioners' claims against Fleet, the exoneration rule operates to bar the petitioners' claims against LBC. *See infra* Section III. And it would be Florida's

District renders inoperative part of section 733.702(4)—the one that says nothing in section 733.702(2), including its extinguishment of causes of action filed outside the period provided in subsection 733.710(1), affects or prevents exceptions listed in subsection (4).

The canon against surplusage, which is in any event not "an absolute rule," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013), is also not "a license for the judiciary to rewrite language enacted by the legislature," *United States v. Albertini*, 472 U.S. 675, 680 (1985). Section 733.702(4)(b) provides an exception to the limits provided elsewhere in section 733.702, and section 733.710(1) stands as the ultimate backstop that "automatically bars untimely claims" filed against the estate, its personal representative, or any beneficiaries more than two years after the decedent's death absent the applicability of one of the exceptions outlined elsewhere in section 733.710. *May*, 771 So. 2d at 1157.

---

nonjoinder insurance statute, not section 733.710(1), that then prevents the petitioners from reaching insurers absent a settlement. *See* § 627.4136(1), Fla. Stat. (providing that before a plaintiff can maintain a cause of action against a liability insurer they must "first obtain a settlement or verdict against a person who is an insured").

Even informed by our consideration of the canon against surplusage, we read section 733.710 as an insurmountable obstacle to the petitioners' claims against Fleet. *See Heyman v. Cooper*, 31 F.4th 1315, 1321-22 (11th Cir. 2022) ("[O]ur obligation is to the text and not the canons *per se.*").

The canon is also of no help because the petitioners' proposed reading fails to give effect to every clause and word of the statutory provisions at issue. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect 'to every clause and word of a statute.' ") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Under the petitioners' proposed reading, the other two exceptions found in section 733.702(4) would also be exceptions to section 733.710(1). One of these exceptions provides "[n]othing in this section affects or prevents . . . [a] proceeding to enforce any mortgage, security interest, or other lien on property of the decedent." § 733.702(4)(a), Fla. Stat. An exception found in section 733.710, however, already provides that section 733.710(1) does not "affect the lien of any duly recorded mortgage or security interest or the lien of any person in possession of personal property

- 21 -

or the right to foreclose and enforce the mortgage or lien." § 733.710(3), Fla. Stat. While the scope of the two exceptions is not identical, the petitioners' proposed reading creates significant overlap, meaning it fails to give independent effect to every provision in both section 733.702 and section 733.710.

In the end, the canon against surplusage does not tip the scales in the petitioners' favor—especially since some degree of surplusage would result under either party's reading.

**3**

Nor are we persuaded that the petitioners can infer their way to a win simply because *Pezzi* has not been expressly repudiated by the Legislature. "[W]e walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle." *Helvering v. Hallock*, 309 U.S. 106, 121 (1940) (Frankfurter, J.). We walk on much firmer ground when we find controlling legal principles in legislation that stems from the processes outlined in our Constitution. *See* art. III, Fla. Const. This is because our job is to interpret statutes according to their meaning when enacted, not to search for some hidden meaning in the inaction of the Legislature between the decision in *Pezzi* and the present (especially

when we cannot identify one reason for this inaction).  *See Johnson v. Transp. Agency, Santa Clara Cnty., Cal.*, 480 U.S. 616, 672 (1987) (Scalia, J., dissenting).

The story told by legislative inaction is also inconclusive because this Court has never declaratively weighed in on the question that now confronts us.  Our statements in *May* supporting the result reached in *Pezzi* were not essential to our holding.[10]  So these statements are "without force as precedent," *State ex rel. Biscayne Kennel Club*, 276 So. 2d at 826, and to the point that legislative acquiescence is used to justify statutory stare decisis, *see Johnson*, 480 U.S. at 629 n.7 (majority opinion), it is irrelevant here.

If the Legislature truly favors the scheme outlined in *Pezzi*, it has the tools to make it the law.  Silence, in the face of a clear statute that cuts the other way, will not do.  *See Rapanos v. United*

---

10.  *See supra* note 3.

*States*, 547 U.S. 715, 750 (2006) (plurality opinion) ("Congress takes no governmental action except by legislation.").[11]

**D**

Given the clarity with which the Legislature spoke, this is a case in which our analysis begins and ends with the statutory language. *See Comerica*, 673 So. 2d at 168 ("[T]here is no ambiguity in the words used in section 733.710."). Section 733.710(1) "sets an absolute deadline beyond which no claim may be entertained" absent the applicability of one of the exceptions outlined in sections 733.710(2) and 733.710(3). *May*, 771 So. 2d at 1155 (quoting *Comerica*, 673 So. 2d at 165). And the petitioners, despite seeking damages only up to the limits of any casualty

---

11. We are also told that approving the First District's opinion would upset settled expectations in probate law, place a heavy burden on trial lawyers, and cause increased expenses in probate court, with more parties filing claims in probate court to avoid section 733.710(1)'s two-year bar. *See* Amicus Brief of Probate Attorneys in Support of Neither Party at 5-9. This case, however, does "not turn on our view of the 'better' policy, but turns solely on statutory interpretation." *Survivors Charter Schs., Inc.*, 3 So. 3d at 1228. And because our interpretation of the statutory provisions at issue leads us to conclude section 733.710(1) bars the petitioners' claims, we have no license to say otherwise.

insurance policy, seek to hold Fleet "liable" for claims against Morton. Because the petitioners' claims against Morton's estate, through Fleet, were filed beyond section 733.710(1)'s two-year deadline and do not qualify under either exception, they are barred.

## III

What about Morton's employer, LBC? Again, the First District was right. When a statute of repose bars claims against an agent for negligence, the principal is exonerated from vicarious liability arising solely from that agent's negligence.

An employer may sometimes be liable for an employee's negligent acts committed within the course and scope of employment—even if the employer is without fault. *Mercury Motors Exp., Inc. v. Smith,* 393 So. 2d 545, 549 (Fla. 1981). Similarly, an individual with an identifiable property interest in a vehicle, most often the titleholder, who gives authority to another to operate the vehicle will be liable for injuries to third persons arising from the vehicle's negligent operation. *Christensen v. Bowen,* 140 So. 3d 498, 501-02 (Fla. 2014).

But under either theory, LBC's liability is vicarious—that is, it only answers for the liability of another. *See Alexander v. Alterman*

- 25 -

*Transp. Lines, Inc.*, 350 So. 2d 1128, 1130 (Fla. 1st DCA 1977) (under the doctrine of respondeat superior, an employer is liable for its employee's negligence undertaken within the scope of employment notwithstanding the employer's conduct); *Christensen*, 140 So. 3d at 501 (the dangerous instrumentality doctrine imposes "strict vicarious liability" on those with an identifiable property ownership interest in the negligently driven vehicle). In other words, LBC's liability depends on Morton's liability. *See Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471 (Fla. 2005) ("[V]icarious liability allows for parties that are not at fault to be held liable for the actions of active tortfeasors."); *Williams v. Hines*, 86 So. 695, 697 (Fla. 1920) (an alleged vicariously liable employer and an employee "are in no sense joint tort-feasors").

And because an alleged vicariously liable employer and its employee "are in no sense joint tort-feasors," a party must establish an employee's liability in a vicarious liability action against the employer. *See Williams*, 86 So. at 697. If a party fails to do so, thus exonerating the employee, "a principal cannot be held liable" either. *Bankers Multiple Line Ins. Co. v. Farish*, 464 So. 2d 530, 532 (Fla. 1985).

Applying this common law rule—the "exoneration rule"—for vicarious liability claims against an employer has turned on whether the underlying claims against the employee have been "adjudicated on the merits."[12] Consequently, the pertinent question before us is whether section 733.710(1), a "jurisdictional statute of nonclaim that automatically bars untimely claims," *May*, 771 So. 2d at 1157, constitutes such an adjudication where the provision bars the petitioners' claims against Morton's estate.

---

12. *Compare Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954) (explaining that "if the employee is not liable[,] the employer is not liable"), *Walsingham v. Browning*, 525 So. 2d 996, 997-98 (Fla. 1st DCA 1988) (holding that the claimants' voluntary dismissal with prejudice was sufficient for precluding a vicarious liability claim), *Jones v. Gulf Coast Newspapers, Inc.*, 595 So. 2d 90, 91 (Fla. 2d DCA 1992) (holding that a settlement resulting in a joint motion to dismiss with prejudice exonerated the employer from vicarious liability), *and Buettner*, 700 So. 2d at 48 ("[W]hen a principal's liability rests solely on the doctrine of respondeat superior, a principal cannot be held liable if the agent is exonerated.") (quoting *Farish*, 464 So. 2d at 532), *with JFK Med. Ctr., Inc. v. Price*, 647 So. 2d 833, 834 (Fla. 1994) (holding that voluntary dismissal of active tortfeasor, with prejudice, entered by agreement of parties under a settlement, is not equivalent to an adjudication on merits that would bar continued litigation against passive tortfeasor), *and Price v. Beker*, 629 So. 2d 911, 912 (Fla. 4th DCA 1993) (rejecting *Walsingham* and *Jones* and noting that Florida Rule of Civil Procedure 1.420(a)(1) does not list a dismissal with prejudice as a decision on the merits), *approved sub nom. JFK Med. Ctr.*, 647 So. 2d at 833.

We conclude that it does, meaning LBC is exonerated from vicarious liability. That is because statutes of nonclaim are "legislative determinations that there must be an outer limit beyond which claims may not be instituted." *Hess*, 175 So. 3d at 695 (quoting *Kush v. Lloyd*, 616 So. 2d 415, 421 (Fla. 1992)) (cleaned up). As a principal's vicarious liability is dependent on that of the agent, allowing such a lawsuit to proceed against the principal when a statute of nonclaim bars the underlying claim against the agent would effectively permit a plaintiff to circumvent the statute. *See Carr v. Broward Cnty.*, 541 So. 2d 92, 95 (Fla. 1989) ("[S]tatutes of repose are a valid legislative means to restrict or limit causes of action in order to achieve certain public interests.").

Concluding that section 733.710(1)'s time bar on the petitioners' claims against LBC constitutes an "adjudication on the merits" finds support in our case law. Namely, in *Allie v. Ionata*, we held that a judgment dismissing a claim as time-barred was an "adjudication on the merits" for res judicata purposes. 503 So. 2d 1237, 1241-42 (Fla. 1987); *see also Carnival Corp. v. Middleton*, 941 So. 2d 421, 424 (Fla. 3d DCA 2006) ("[A] dismissal based on statute of limitations grounds constitutes an adjudication on the merits for

- 28 -

purposes of res judicata."). We also stated in *Allie* that "[t]he expiration of a statute of limitations does not resolve the underlying merits of the consequently barred claim in favor of either party." 503 So. 2d. at 1239-40. Yet, as *Allie*'s holding makes plain, the dismissal of an untimely claim (like the one here) can amount to an "adjudication on the merits" even if the claim's underlying merits were never actually "resolve[d]." *Id.* at 1240-42; *cf. Elbadramany v. Bryson Crane Rental Servs., Inc.*, 630 So. 2d 214, 216 (Fla. 5th DCA 1993) ("A default judgment bars any claims asserted therein and operates as *res judicata* on the issues.").

Other courts of this State have similarly concluded that a time bar on claims against an agent acts as an adjudication on the merits to exonerate the principal. Take *Buettner*, 700 So. 2d at 48, a case that the First District below found dispositive as to LBC's liability. There, the district court reviewed a final summary judgment dismissing as untimely the plaintiffs' vicarious liability claim against an employer filed more than two years after the death of the deceased employee. *Id.* "[B]ased on the two-year statute of limitations . . . in sections 733.702(5) and 733.710," the trial court had entered judgments for both the employee and the employer. *Id.*

at 48, 48 n.1.  On appeal, the First District affirmed.  After holding that the dismissal of the untimely liability action against the employee under sections 733.702(5) and 733.710(1) exonerated the employee, the district court concluded that the vicarious liability action against the employer was barred under the exoneration rule. *Id.* (citing *Farish*, 464 So. 2d at 532).

In the end, claims based on vicarious liability are unavailable against LBC because section 733.710(1)'s bar on untimely claims against Morton through his estate amounts to an "adjudication on the merits."  Accordingly, the First District correctly held that section 733.710(1)'s statute of nonclaim exonerates LBC from vicarious liability for Morton's negligence.

## IV

For the reasons stated above, we approve the First District's decision and disapprove the Fourth District's decision on the applicability of section 733.710(1).  We also approve the decision of the First District as to the exoneration rule.

It is so ordered.

MUÑIZ, C.J., and CANADY, GROSSHANS, and FRANCIS, JJ., concur.

LABARGA, J., dissents with an opinion.

SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

I agree with the majority that if the claims against the decedent's estate are barred by the statute, then LBC cannot be vicariously liable. However, because I would hold that sections 733.702 and 733.710, Florida Statutes, do not bar the claim against Morton's estate, I dissent.

To conclude that sections 733.702 and 733.710 bar suit, the majority pleads for exacting specificity where none is needed. It is correct that a word's context guides us through linguistics' murky waters. *See* majority op. at 7; *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)); *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace & Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 657 (1998) (where Justice Scalia explains that drawing upon a term's context is a "fundamental principle" of interpretation). But contrary to the majority's interpretation of the

- 31 -

term "liable," that context actually provides the clarity the majority yearns for and compels a different result.

In interpreting "liable," the majority ignores the term's context to hold that more precise language is required for the statute to say what it indeed already says. However, the context of the statute alone makes it apparent: the estate and its proxies can only be liable for claims against the decedent in a pay-money sense, and so in protecting those entities, the term "liable" in 733.710 can only refer to pay-money liability. *See* § 733.710, Fla. Stat. The words of the statute itself naturally lead to the pay-money interpretation. That alone should settle the issue. Rather than address this argument on its merits, the majority looks elsewhere to muddy the statute's clear language, and then asks for clarity.

For example, the majority notes the lack of a legislatively supplied definition of "liable" and seeks out the word's "plain and ordinary meaning" at the time of the statute's enactment. At the outset, when the term's context compels the meaning, it is a step

too far to search for a specific definition from the Legislature.[13] *See*

*Nehme v. Smithkline Beecham Clinical Laboratories, Inc.*, 863 So. 2d

201, 204-05 (Fla. 2003) ("[w]e give statutory language its plain and

ordinary meaning, unless words are defined in the statute *or by the*

*clear intent of the legislature. . . . When necessary*, the plain and

ordinary meaning of words can be ascertained by reference to a

dictionary.") (first quoting *Green v. State*, 604 So. 2d 471, 473 (Fla.

1992); and then *Seagrave v. State*, 802 So. 2d 281, 286 (Fla. 2001))

(emphasis added).  Furthermore, use of a word's "plain and

ordinary meaning" to muddle a self-evident interpretation distorts

an otherwise well-reasoned principle.  *See Hampton v. State*, 103

So. 3d 98, 110 (Fla. 2012) ("Accordingly, the phrase should be

afforded its plain and ordinary meaning, *giving due regard to the*

*context within which it is used*.") (emphasis added); *Willens v.*

*Garcia*, 53 So. 3d 1113, 1116 (Fla. 3d DCA 2011) ("One of the

fundamental tenets of statutory construction requires courts to give

---

13. Even to the majority's point, *Black's Law Dictionary* included "compellable to make satisfaction, compensation, or restitution" as a definition of "liable."  *Liable, Black's Law Dictionary* 915 (6th ed. 1990).  The pay-money understanding of liability is well within the word's "plain and ordinary meaning."

the words of a statute the plain and ordinary meaning usually attributed to them, unless a different meaning or connotation necessarily is implied from the manner or context in which the words are used.").

In support of its conclusion, the majority looks to other uses of "liability" in the pay-money sense throughout the Florida Statutes, noting that those instances have been accompanied by more precise language. *See* majority op. at 17. But again, such precise language is unnecessary when the context commands a certain interpretation.

Nor does looking to the term "liability" in section 733.702(4)(b) refute the pay-money interpretation of liable in 733.710. Correctly, the majority interprets "liability" in section 733.702(4)(b) as meaning something different than pay-money liability but finds "no reason" why "liable" should be read differently between the statutes. Again, context is key. Section 733.710 focuses on liability of the estate and its proxies for claims against the decedent, implicating only pay-money liability. *See* § 733.710, Fla. Stat. ("[n]either the decedent's estate, the personal representative . . . nor the beneficiaries shall be liable."). On the other hand, section 733.702

- 34 -

focuses not on the liability of parties, but on causes of action. *See* § 733.702(1)-(3) ("no claim or demand . . . [n]o cause of action . . . [a]ny claim."). A cause of action, of course, may implicate both breach-of-duty and pay-money liability; the term "liable" in section 733.702(4)(b) reflects that context. The terms' contexts provide the "reason" for the different meanings of the term "liable."

Where the majority does look specifically to section 733.710, the argument is unpersuasive. It argues that rather than using the phrase "for any claim or cause of action against the decedent," the Legislature could have named specific examples that would "square more naturally" with pay-money liability. It is true that there are numerous ways the statute could better say what it says. But that notion should not be used to cloud the clear and logical conclusions of a word's context.

The estate and its proxies can only be liable for claims against the decedent in a pay-money sense, and so "liable" in section 733.710 can only refer to one thing. To be clear, had the statute not been focused on the liability of the estate and its proxies, the majority's myriad of arguments would likely prove persuasive.

However, when the statute's own text so directly compels an interpretation, such indirect justifications must fail.

At the end of the day, the majority makes much ado about what the Legislature *could have* done to better specify pay-money liability. In the same way that the majority takes issue with relying on legislative inaction, I take issue with relying so heavily on how the Legislature *could have* written a statute. *See* majority op. at 22-24. When the words of the statute so obviate any need for clarification, it is easy to imagine that the Legislature felt that extra explanation was unnecessary. For these reasons, I would hold that the term "liable" in section 733.710 refers to pay-money liability, that sections 733.702 and 733.710 do not bar suit against Morton's estate, and accordingly that suit may be brought against LBC under a theory of vicarious liability.

Application for Review of the Decision of the District Court of Appeal
    Certified Conflict of Decisions/Direct Conflict of Decisions

    First District – Case No. 1D20-901

    (Escambia County)

Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida; and Coy H. Browning of Browning Law Firm, P.A., Fort Walton Beach, Florida,

    for Petitioners

Charles Wiggins and Terrie L. Didier of Beggs & Lane, RLLP, Pensacola, Florida,

    for Respondents

John S. Mills of Bishop & Mills, PLLC, Jacksonville, Florida, and Courtney Brewer of Bishop & Mills, PLLC, Tallahassee, Florida,

    for Amici Curiae Probate Attorneys, Sean F. Bogle, John P. Cole, Robert D. Hines, Matthew H. Hinson, Christopher D. Russo, and Kathryn E. Stanfill

Philip M. Burlington of Burlington & Rockenbach, P.A., West Palm Beach, Florida,

    for Amicus Curiae Florida Justice Association